IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1273 T
(Judge Susan G. Braden)

JOAN HUSKINS, as personal representative of the
ESTATE OF PHILIP GOLDSTEIN,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

JOINT PRELIMINARY STATUS REPORT

Pursuant to paragraph 4 of RCFC, Appendix A, the parties submit the following information. This document will be electronically filed on May 30, 2006.

a. Jurisdiction.

The parties believe that the Court has jurisdiction of this case.

b. Consolidation. The parties know of no case in this Court with which this case should be consolidated.

c. Bifurcation of trial. Separate trials on the questions of liability and damages in this tax refund suit are unnecessary.

d. Deferral of proceedings. The parties know of no reason why this case should be deferred.

e. Remand or suspension. Not applicable.

f. Additional parties. There are no additional parties.

g. Dispositive motions.

1. The Plaintiff's Position

The plaintiff plans to file a motion for summary judgment. See paragraph h, section 1, infra.

2. The Defendant's Position

The defendant plans to file a motion to dismiss this case for failure to state a claim on which relief can be granted. See paragraph h, section 2, infra.

h. Issues.

1. The Plaintiff's Position

The sole issue in this case is whether the $165,000 remittance that plaintiff made on May 5, 2000, constituted a deposit or a payment of estate tax. The remittance was accompanied by a letter from plaintiff's attorney indicating that "this payment is to be applied to the estate tax on the estate of the above-named decedent", but that "the Form 706 [estate tax return] has as yet not been filed." At the time of the remittance, the amount of estate tax liability was undetermined. The remittance did not discharge any amount that plaintiff deemed to be a tax liability or pay any tax liability that was proposed by defendant. It was an interim arrangement to stop the accrual of penalties and interest on whatever estate tax liability might be owed. Plaintiff remitted more than she believed she owed with the good faith belief that defendant would return any excess.

Plaintiff filed the federal estate tax return on November 2, 2004, showing that no estate tax was owed and demanding the return of the $165,000 remittance. Defendant refused to return the remittance, claiming that it was a payment of tax, rather than a deposit, which could only be refunded pursuant to a timely filed claim for refund. Since the estate tax return was filed more

than three years after the remittance, defendant contended that plaintiff's claim was barred by the statute of limitations.

A remittance need not be designated as a deposit for it to be treated as one. Rev. Proc. 84-58, 1984-2 CB 501[1] recognizes only two types of remittances – "designated" and "undesignated". "Designated" remittances are those which have been specifically designated as "deposits", and "undesignated" remittances are all others, including those designated as payments. *See,* Rev. Proc. 2005-18, 13 IRB 798, 3/14/2005.[2] Rev. Proc. 84-58, section 4.04, provides that "any undesignated remittance not described in section 4.03 made before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a revenue agent's or examiner's report), will be treated by the Service as a deposit in the nature of a cash bond." Under section 4.03, "a remittance not specifically designated as a deposit in the nature of a cash bond will be treated as a payment of tax if [and only if] it is made in response to a proposed liability, for example, as proposed in a revenue agent's or examiner's report, and remittance in full of the proposed liability is made." In all other cases, the remittance is treated as a deposit. A remittance for only a portion of the proposed liability, regardless of how it is described or referred to, will be treated as a deposit, and not as a partial payment, "unless the taxpayer specifically designates what portion of the proposed liability the taxpayer intends to satisfy." Only if the remittance discharges a tax liability that was proposed by defendant in writing does its treatment depend on the taxpayer's designation. In all other circumstances, the treatment of the remittance as a deposit is dictated by Rev. Proc. 84-58. Since the remittance involved here

---

[1] Rev. Proc. 84-58 is filed with this document as Attachment 1.

[2] Rev. Proc. 2005-18 is filed with this document as Attachment 2.

was not made to discharge an estate tax liability that was proposed by defendant in writing, it necessarily constituted a deposit under Rev. Proc. 84-58.

Defendant seems to contend that the taxpayer may require defendant to treat a remittance as a payment of tax, even though it clearly constitutes a deposit under Rev. Proc 84-58, simply by referring to it as a "payment". If that were the rule, any taxpayer could use the defendant as his bank. He could simply dump funds on the defendant and earn interest at the overpayment rate for the entire time they are in the defendant's possession. It is for the defendant's own benefit that Rev. Proc. 84-58 prohibits the payment of interest on remittances that are unrelated to any admitted or proposed tax liabilities. It accomplishes that goal by treating such remittances as non-interest bearing deposits. Surprisingly, the defendant urges a result that would clearly be disastrous for the defendant.

Defendant is correct that Rev. Proc. 2005-18 technically applies to remittances made after October 22, 2004. It is cited only because it resolves what could be described as an ambiguity in Rev. Proc. 84-58 by defining the term "undesignated remittance". This is a term that is used, but not specifically defined, in Rev. Proc. 84-58. It is clear that the term has the same meaning in each Rev. Proc. The phrase "undesignated remittance" in Rev. Proc 2005-18, section 4.03, replaces the phrase "remittance not specifically designated as a deposit" in Rev. Proc. 84-58, section 4.03. "Undesignated remittances" are treated in exactly the same manner under each Rev. Proc. Each provides that any remittance which is not specifically designated as a deposit will be treated as a payment if, and only if, it discharges a tax liability that was proposed by the defendant in writing. In all other cases an undesignated remittance is treated as a deposit. Rev. Proc. 2005-18 did not effect any change that is material here. Rev. Proc. 82-51, 1982-2 CB 839,

which was updated by Rev. Proc. 84-58, contains the same rule. Defendant urges the Court to reject a rule that has been firmly in place for nearly 25 years and was reaffirmed as recently as last year.

In any event, defendant's claim that plaintiff designated the remittance as a "payment" is erroneous. In making that claim, defendant relies entirely upon plaintiff's attorney's reference to the remittance as a "payment" in the letter which accompanied the remittance. The argument is misguided since even remittances that are referred to as payments constitute "undesignated" remittances under Rev. Proc. 84-58, and are treated as deposits unless they are made to discharge an admitted or proposed tax liability. Nevertheless, a generic reference to a remittance as a "payment" does not characterize it as a "payment of tax" for purposes of Rev. Proc. 84-58. A remittance is clearly a "payment" in the ordinary and customary sense. Defendant's argument is based on the preposterous assumption that, in referring to the remittance as a "payment", plaintiff was mindful of the highly technical distinction that Rev. Proc. 84-58 draws between deposits and "payments of tax". The rules that characterize remittances are unconcerned with such meaningless labels and semantics.

In fact, even defendant commonly refers to deposits as "payments". *See, e.g.,* Service Center Advice 1998-002 (in which the defendant said that an advance payment may be a deposit or a payment of tax, depending on the circumstances); Internal Revenue Manual, section 8.1.1.3.1, (in which all remittances, including deposits, are referred to as advance payments); Internal Revenue Manual, section 3.17.63.19.11.1 (which provides for treatment of advance payments as cash bonds); Private Letter Ruling 8943003, 7/11/1989 (in which the defendant said it is necessary to determine whether an advance payment is a deposit or payment of tax); Field

Service Advice 199930014 (in which advance payments were held to be deposits). *See, also, New York Life Insurance Company v. United States,* 118 F. 3d 1553 (Fed. Cir. 1997), *aff'g.* 76 AFTR 2d 95-7539 (Ct. Cl. 1995) (where a remittance was held to constitute a "deposit", even though the taxpayer referred to it as a "payment" no fewer than seven times in the accompanying letter).

In an attempt to distinguish *Rosenman, infra.,* on the grounds that the plaintiff described the remittance as a "payment", Defendant represents that the letter submitted with the remittance in *Rosenman* specifically denied owing any tax and said that the remittance was being made solely to avoid interest and penalties. See Note 4, *infra.* In fact, the transmittal letter which accompanied the remittance in *Rosenman* said "We are delivering to you herewith, by messenger, an Estate check payable to your order, for $120,000, as a payment on account of the Federal Estate tax [emphasis added]." If no estate tax were owed, a remittance would not have been required to avoid interest or penalties. The circumstances involved here are materially indistinguishable from those in *Rosenman* where the Supreme Court held that a remittance described as a "payment on account of Federal Estate tax", was a deposit because it did not discharge an admitted or proposed tax liability.

Defendant claims that it treated plaintiff's remittance as a payment of the estate tax. This argument is also misdirected because defendant's treatment of a remittance as a payment does not make it one. It is not up to defendant to arbitrarily and unilaterally decide whether a remittance constitutes a payment or a deposit. In fact, defendant did not treat the remittance as a payment of tax. If defendant had regarded the remittance as a payment of estate tax, it would have coded it 660, and reflected that treatment on Form 3244-A, Payment Posting Voucher.

Instead, defendant classified the remittance as a "code 670 - subsequent payment". Defendant has not yet produced Form 3244-A and has expressed doubt about its ability to do so.

According to the Internal Revenue Manual and technical internal Document 6209, code 670 is a dumping ground for many types of remittances, including prepayments and subsequent payments. A remittance is typically coded 670 when its character is unknown. Since "prepayments" are defined as remittances made before a return is posted, "subsequent payments" are presumably remittances made subsequent to the posting of the return. The remittance involved here was clearly not a subsequent payment. It was made four years before the return was filed. The manner in which the defendant codes remittances is arbitrary and capricious. Defendant sometimes codes remittances that are specifically designated as deposits as "670 – subsequent payments". See. e.g., *U.S. v. Tate & Lyle North American Sugars, Inc.*, 90 AFTR 2d 2002-6485 (S.D.N.Y. 2002), *aff'd, U.S. v. Domino Sugar Corp.*, 92 AFTR 2d 2003-6936 (2d Cir. 2003). Defendant now attempts to exploit to its advantage its own mishandling of the remittance.

If the remittance had been a payment of tax, under IRC §6213(b)(4), the defendant would have assessed the amount of tax that was paid by the remittance. It is undisputed that no corresponding estate tax liability was assessed. The offsetting debit is a mysterious entry described only as a code 820 "credit transferred". Defendant explains that it could not assess a tax liability because the plaintiff had not filed a return. That, of course, is why Rev. Proc. 84-58, *Rosenman, infra (*and the large body of existing case law) all hold that remittances made before a return is filed, or a liability is proposed by defendant, necessarily constitute deposits.

Defendant asks the Court to interpret Rev. Proc. 84-58 so as to treat the remittance in a manner that would violate *Rosenman v. United States,* 323 U.S. 658 (1945). The Fifth Circuit interpreted *Rosenman* in *Thomas v. Mercantile Nat'l Bank,* 204 F. 2d 943 (5th Cir. 1953), as holding that all pre-assessment remittances are deposits *per se.* That rule continues to apply in the Eleventh Circuit, where the decedent resided at the time of his death, for remittances other than wage withholdings and estimated income tax payments which are subject to the "deemed paid" provisions of IRC §6513(b). *See, Dantzler v. U.S.,* 183 F.3d 1247 (11th Cir. 1999). However, plaintiff's claim does not depend on the Court adopting *Thomas' per se* rule as defendant contends. The undisputed facts involved here are materially indistinguishable from those involved in *Rosenman.* In *Baral v. United States,* 528 U.S. 431 (2000), the Supreme Court made it clear that *Rosenman c*ontinues to apply to remittances of taxes, such as estate taxes, which are not subject to the "deemed paid" provisions of IRC §6513(b).

*Rosenman* holds that any remittance which does not discharge what the taxpayer deems to be a tax liability or pay a tax liability that was asserted by the defendant, is merely an "interim arrangement to cover whatever contingencies the future might define", and is necessarily a deposit. In *Rosenman*, as here, the remittance was made to avoid penalties and interest on whatever estate tax liability might be owed. In both cases, the remittance was made before the estate tax return was filed or the amount of the estate tax liability was determined. In both cases, the taxpayer elected to remit more than the amount of tax she believed to be owed with the good faith belief that defendant would return the excess (albeit without interest). In both cases, the taxpayer referred to the remittance as a "payment" on account of (or to be applied to) estate tax. *Rosenman* holds that remittances made in such circumstances are necessarily deposits, regardless

of how the taxpayer refers to them. In accord is *Northern Natural Gas Co.,* 173 Ct. Cl. 881 (1965), where this Court said "where a taxpayer . . . simply dumps funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability", the remittance is a deposit and not a payment of tax. This rule was reaffirmed in *Fisher v. United States,* 28 Fed. Cl. 88 (1993) (where the Court held that a remittance which equaled the amount of tax liability asserted by defendant in a notice of deficiency was not a "dumping of funds" and therefore constituted a tax payment).

In *Cohen v. United States,* 995 F. 2d 205 (Fed. Cir. 1993), *aff'g.* 23 Cl. Ct. 717 (1991), the Court expanded the application of *Rosenman* to payments of a tax liability asserted by defendant, provided that the taxpayer expresses his intent to contest the liability. *See, also, Leich v. United States,* 165 Cl. Ct. 127 (1964) (where remittances made prior to assessment were held to be deposits where the taxpayer contested the liability proposed by defendant). Where, as here, defendant has not asserted a tax liability, there is obviously nothing to contest.

Defendant may attempt to distinguish R*osenman* based on the fact that the letter which accompanied the remittance in that case indicated that the "payment" was made under "protest and duress", while the letter which accompanied the remittance in this case did not. It would be a meaningless distinction. The executors in *Rosenman* were not protesting the amount of any liability proposed by the defendant. In *Rosenman,* as here, defendant had not proposed any estate tax liability. The executors protested the fact that defendant rejected their request for an extension of time for payment of the estate tax and insisted on payment before the amount of the liability could be determined. The remittance in *Rosenman* was held to be a deposit because it was not made to discharge an admitted or proposed tax liability. Like the remittance here, it was

merely an interim arrangement to cover whatever contingencies the future might define. Based solely on the undisputed fact that plaintiff made this remittance before the estate tax return was filed, and before defendant proposed a tax liability in writing, plaintiff is entitled to judgment as a matter of law.

Although plaintiff's claim is not dependent to any extent on the Court adopting *Thomas' per se* rule, defendant's contention that the Supreme Court rejected that rule in *Baral* is erroneous. In *Baral,* the Court held that estimated tax payments submitted with Form 4868, the application for an automatic extension of time for filing an individual income tax return, which, under IRC §6513(b), are "deemed paid" on the last day prescribed for filing the taxpayer's income tax return, constituted tax payments rather than deposits. The Court did not say, expressly or impliedly, that the Fifth Circuit's application of *Rosenman* to the estate tax remittances in *Thomas* was erroneous.

Defendant's contention that the Fifth Circuit abandoned the application of *Thomas' per se* rule to remittances of estimated estate taxes in *Deaton v. United States,* 440 F. 3d 223 (5th Cir. 2006), is similarly erroneous. *Deaton* also involved remittances of estimated income taxes with Form 4868 that were "deemed paid" under IRC §6513(b). While the Fifth Circuit said that it is not bound to *Thomas* insofar as estimated income tax payments that are deemed paid under IRC §65213(b), nothing in *Deaton* suggests that the Fifth Circuit would apply *Rosenman* differently than it did in *Thomas* when remittances of estate taxes are involved.

Defendant's reliance on *VanCanagan v. United States,* 231 F. 3d 1349 (Fed. Cir. 2006), which also involved remittances of estimated income tax payments with Form 4868, is misplaced, and its interpretation of the holding is erroneous. The Federal Circuit found it

unnecessary to determine whether the remittance of estimated taxes was a deemed payment of tax under IRC §6513(b) because Form 4868, which accompanied the remittance, very specifically characterized the remittance as a payment of tax. The Form required that the taxpayer disclose what he admitted to be his tax liability for the prior year and deduct the portion of that tax liability that was previously paid, whether by estimated tax payments, wage withholdings or credits carried forward from prior years. That computation revealed what the taxpayer admitted to be his unpaid tax liability for the prior year. As a condition of the extension of time for filing the return, he was required to pay and discharge the entire amount of that admitted tax liability. The Federal Circuit's treatment of the remittance as a payment was perfectly consistent with *Rosenman. Rosenman* does not treat the payment of an admitted tax liability as a deposit.

Most circuit courts have held that remittances of estimated income tax with Form 4868 are tax payments *per se.* In *VanCanagan,* however, the Federal Circuit rejected the *per se* rule. It said that a taxpayer may be able to overcome the presumption that he intended a remittance made pursuant to Form 4868 be treated as a payment of tax where he clearly expresses his intent that it be treated as a deposit. Since the taxpayer in *VanCanagan* expressed no such intent, the evidence showed that he intended the remittance be treated as a payment of tax.

*VanCanagan* does not speak to any remittance that was not made pursuant to Form 4868. Without Form 4868 which specifically characterizes the remittance as a payment of tax, there is no presumption that plaintiff must overcome. *VanCanagan* does not hold, as defendant contends, that the failure to specifically designate a remittance as a deposit results in it being treated as a payment of tax or allows the defendant to treat it however it wishes. *VanCanagan* does not hold, as defendant contends, that a remittance which is not specifically designated as a deposit

somehow fails to comply with Rev. Proc. 84-58. The Rev. Proc. prescribes the treatment of all remittances, regardless of how or whether they are designated.

Defendant argues that its unilateral characterization of the remittance should be determinative because it needs to know from the time it is made whether or not to pay interest on it. This argument evidences a fundamental misunderstanding of how deposits work and why they are made. A taxpayer makes a deposit to stop the accrual of interest, from the date of the remittance, on the same amount of tax that the deposit is ultimately applied to pay. Any deposit which is ultimately applied to pay a tax liability earns interest in exactly the same amount as a payment of tax. To the extent a deposit is not applied to pay a tax liability, it must be returned to the taxpayer without interest. Whether or not defendant pays interest on a deposit will depend entirely upon how it is ultimately applied, which is generally not known until long after the deposit is made. The character of a remittance as a deposit or payment of tax generally does not become an issue until the taxpayer demands its return. Plaintiff submits that, if she had filed the estate tax return showing no tax liability within three years of the remittance, defendant would have considered the remittance to be a deposit and returned it without interest. It is only because the return was filed more than three years after the remittance that defendant finds it beneficial to characterize the remittance as a payment of tax.

Because defendant's position is without basis in law, defendant resorts to arguing the equities of the parties' respective positions. This is a curious strategy given the undisputed fact that defendant is in possession of $165,000 of plaintiff's money that she never owed. Nevertheless, defendant claims that the remittance should be characterized as a payment of tax based on the assumption that plaintiff would have been willing to accept interest with the return

of the remittance if defendant had been willing to pay it. Defendant claims that plaintiff's demand for the return of the remittance without interest constitutes an "after-the-fact" change in position. Again, this argument is predicated on a misunderstanding of how deposits work. There was no change in position by plaintiff. When plaintiff made the remittance she thought that some portion of it would eventually be applied to pay an estate tax liability. If the remittance had been applied as anticipated, the deposit would have earned interest in exactly the same manner that as a payment of tax and there would be no dispute over its character. She deposited the funds with the understanding that the defendant would return any portion that she did not owe. As it turned out, there was no estate tax liability to be paid.

2. The Defendant's Position

In this case, the plaintiff demands repayment of $165,000, which her attorney sent to the IRS on May 5, 2000, as a "*payment* . . . to be applied to the estate tax" owed by the Estate of Philip Goldstein. Compl. Ex. A (emphasis added). Accordingly, on May 5, 2000, the IRS entered the remittance on the Estate's account as a payment. The plaintiff filed neither a tax return (which would assess a tax) nor a claim for refund of this payment within the time permitted by 26 U.S.C. (Code) § 6511(a) (refund claim must be filed within three years of the date the return was filed or within two years of the date of payment, whichever period expires later), and absent a timely refund claim "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously assessed or collected . . . ." Code § 7422(a).

*A. When a taxpayer instructs the IRS to treat a remittance a "payment," the IRS must treat it as a payment (which bears interest); the payment does not become a deposit later if the taxpayer fails to file a timely return or claim for refund.*

The plaintiff now asserts that her self-described payment was really a "deposit," which the IRS must refund upon demand. She set out her original argument in paragraph 9 of her complaint (emphasis added): "Unless and until there is an *assessment* of the estate tax, any remittance of said estate tax constitutes a deposit in the nature of a cash bond that must be returned to the taxpayer upon demand therefor." The plaintiff's assertion states the *per se* rule (formerly accepted by the Fifth Circuit) that any remittance not assessed within the statute of limitations constitutes a refundable deposit despite any other circumstance. *See, e.g., Thomas v. Mercantile Nat'l Bank,* 204 F.2d 943, 944 (5th Cir. 1953). In paragraph 3 of her complaint, the plaintiff cites *New York Life Insurance Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997), perhaps in the belief that the Federal Circuit had accepted the *per se* rule.

The Supreme Court, however, rejected the *per se* rule in *Baral v. United States*, 528 U.S. 431, 437-39 (2000) (holding that a remittance was a payment, not a deposit, even though no assessment was made within the statute of limitations, and noting at 439 n.2 that the IRS has promulgated a revenue procedure to govern classification of remittances as payments or deposits, Rev. Proc. 84-58, 1984-2 Cum. Bull. 501). Accordingly the Fifth Circuit has also abandoned the *per se* rule. *See Deaton v. Comm'r*, 440 F.3d 223, 231 (5th Cir. 2006) ("*Baral* abrogated the rule established in *Mercantile National Bank*"); *see also id.* at 229-30 ("We now hold that post-*Baral*, we are no longer bound by the *Mercantile National Bank* line of authority").[3] And if the Federal

---

[3] The Eleventh Circuit was part of the Fifth Circuit before October 1, 1981, and it accepts as binding precedent all Fifth Circuit cases decided before then. The plaintiff notes that

Circuit ever did adopt the *per se* rule, it has since returned to its former position that all the facts and circumstances must be considered to determine whether a remittance is a payment or a deposit. *See VanCanagan v. United States*, 231 F.3d 1349, 1352-53 (Fed. Cir. 2000) (tax remittance was a payment and not a deposit because (1) taxpayer did not follow the IRS's revenue procedure governing deposits; (2) taxpayer never stated that the remittance was a deposit; and (3) Government did not treat the remittance as a deposit).[4] *See also, e.g., Charles Leich & Co. v. United States*, 329 F.2d 649, 652 (Ct. Cl. 1964) ("[T]he fact that there has been no

---

the Eleventh Circuit has not yet abandoned *Thomas v. Mercantile National Bank*, though the Fifth Circuit has–and the plaintiff's decedent once lived in the Eleventh Circuit. The defendant cannot understand the point of this observation. Even if the Eleventh Circuit disagreed with the Fifth Circuit's decision that *Baral* abolishes the *per se* rule of *Mercantile National Bank*, the Federal Circuit's decisions govern here, no matter where the plaintiff's decedent may once have lived.

[4] The plaintiff insists that in *Deaton* and *VanCanagan* the Fifth Circuit and the Federal Circuit found remittances to be payments rather than deposits only because the remittances accompanied Forms 4868 (requests for an extension of time to file a return). Such remittances may be subject to the "deemed *paid*" provision of Code § 6513(b) (governing estimated tax payments), but the Federal Circuit expressly refused to consider "whether a remittance that accompanies Form 4868 is of an estimated income tax within the meaning of section 6513 . . . ." 231 F.3d at 1352. Instead, it stressed that its "decision . . . turns on the facts and circumstances here." *Id*. at 1354. Similarly the Fifth Circuit based its decision on *Deaton*'s particular facts, noting, "We leave for another day the question of whether all Form 4868 remittances should be treated as payments of estimated tax . . . ." 440 F.3d at 232.

Furthermore, the present case is not "materially indistinguishable" from *Rosenmann*, as the plaintiff insists. The plaintiff here instructed the IRS in writing to treat her remittance as a "payment . . . to be *applied* to the estate tax" that the plaintiff must have believed would be owing in the future. Otherwise she would not speak of an estate tax to which the payment could be *applied*. At her request, the IRS booked the remittance as a payment, which would bear interest if refunded. By contrast, in *Rosenmann* the taxpayer stated in writing that it owed no tax in the amount remitted and that it made the remittances solely to avoid penalties and interest (*see* 323 U.S. at 660); the Government "set aside [the remittance] in special suspense accounts" where it would not bear interest (*id.* at 662).

assessment or tax return which sets forth the tax liability should not of itself negate 'payment.' There must be other factors present which . . . have the effect of negating 'payment'").

In the light of this precedent, the parties must engage in discovery to determine all the facts and circumstances surrounding the plaintiff's remittance.

*B. Because the plaintiff designated her remittance in writing as a "payment," the remittance cannot be an "undesignated remittance"; and even if it were, the plaintiff has misread and misapplied the revenue procedures that govern undesignated remittances.*

Tax payments bear interest (*see* Code § 6611(a)), and deposits do not. It is therefore vital for the IRS to know when it should treat an amount as a payment. The plaintiff asked the IRS to accept her check as a "payment to be applied to the estate tax on the estate of the above-named decedent." Following her instructions, the IRS booked the amount as a payment and would have paid interest on any refund from the date of the remittance had the plaintiff respected the statute of limitations for filing refund claims. The defendant surmises that she would not have refused the interest on the ground that she had really meant to make a deposit. Now that the statute has run, however, she prefers to treat the amount as a deposit–and to support her position she invokes rules the IRS has issued in order to prevent such after-the-fact changes in position. She misunderstands the rules.

The plaintiff made her remittance on May 5, 2000. She now insists that the remittance was an "undesignated remittance" as defined by Rev. Proc. 2005-18, 13 I.R.B. 798, 2005 WL 580680 (3/14/2005). That revenue procedure applies to deposits governed by Code § 6603, which Congress added to the Code on October 22, 2004. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, Title VIII, § 842(a), 118 Stat. 1418, 1598. The statute applies to

remittances made after October 22, 2004. *See id.* at § 842(c), 118 Stat. at 1599. Consequently, Rev. Proc. 2005-18 cannot apply to this case because it also governs remittances made after October 22, 2004. *See* Rev. Proc. 2005-18, § 10.

Furthermore, under the terms of Rev. Proc. 2005-18, § 4.01(2) (emphasis added), "a remittance that is not designated as a deposit (an 'undesignated remittance') *will be treated as a payment*" except as provided in two other sections of the revenue procedure, which do not apply to the plaintiff's remittance–§ 4.01(1) (deposits made under Code § 6603) and § 4.05(3) (the part of a remittance that exceeds a deficiency determined by the Tax Court). If Rev. Proc. 2005-18 applied to this case, it would define the plaintiff's remittance as a payment.

After deriving a definition from Rev. Proc. 2005-18, an inapplicable and adverse authority, the plaintiff carries the definition back twenty-one years to Rev. Proc. 84-58.[5] According to the plaintiff, her *designated payment* (now an "undesignated remittance" thanks to Rev. Proc. 2005-18) must be repaid because "[a]ny undesignated remittance not described in section 4.03 [remittances responding to proposed liabilities] made before the liability is proposed to the taxpayer in writing . . . will be treated by the Service as a deposit in the nature of a cash bond." Rev. Proc. 84-58, § 4.04(1), 1984-2 C.B. 501.

---

[5] Because Rev. Proc. 2005-18, § 9, expressly supersedes Rev. Proc. 84-51, the drafters could hardly have expected their work to affect the interpretation of the earlier revenue procedure. Retroactive application of superseding authority is not the plaintiff's only unorthodox method of interpretation; she also custom-tailors new authority to fit her case. According to her, Rev. Proc. 84-51 treats a remittance as a payment "if *and only if*" a tax liability has been proposed. She wrote the words *and only if*. The IRS did not, and for good reason. If the Court adopts the plaintiff's new *per se* rule, no taxpayer will ever be able to collect interest on such an early remittance when the remittance is repaid–even if the taxpayer made the remittance insisting that it should be treated as a payment. Had the plaintiff herself filed a timely claim for refund, she would have found this new rule shocking and unjust.

The plaintiff assumes what she must prove–that a remittance she herself designated in writing as a payment somehow became an "undesignated" remittance once the statute had run and she could no longer claim a refund. She must show why the IRS was wrong to take her at her word when she requested the benefit of having her remittance treated as an interest-bearing "payment." In *Rosenmann* the Supreme Court noted, "It will not do to treat the same transaction as payment and not as payment, whichever favors the Government." 323 U.S. at 663. The same rule should apply to taxpayers.[6]

The defendant believes that the issues before the Court are the following:

A. If a taxpayer instructs the IRS in writing to accept a remittance as a "payment . . . to be applied to [an] estate tax," and if the IRS treats the remittance as a payment, is the remittance a payment?

B. Other than filing a return that reported no tax liability long after the statute of limitations had run, did the plaintiff write, do, or say anything that could "have the effect of negating 'payment'" (*Leich*, 329 F.2d at 652)?

C. Can Rev. Proc. 84-58 be read using a definition contained in a later revenue procedure in order to reach a result contrary to the result the later revenue procedure would produce if it applied to this case?

The plaintiff will have failed to state a claim upon which relief can be granted unless she produces at least some evidence that she made a deposit rather than a payment. She cannot

---

[6] The plaintiff had legal representation when she made her remittance. She therefore knew (or should have known) an infallible way to have her remittance treated as a deposit: "A remittance made before the mailing of a notice of deficiency that is designated by the taxpayer in writing as a deposit in the nature of a cash bond will be treated as such by the Service." Rev. Proc. 84-58, § 4.02(1). Her failure to make such a designation is one of the facts and circumstances that the Court should consider. *See VanCanagan*, 231 F.3d at 1353.

continue to rely simply on the lack of an assessment (the *per se* rule), and she cannot pick and choose among legal authorities when she presents her arguments.

Until discovery has been completed, the defendant cannot tell whether these issues can be narrowed by stipulation or otherwise.

i. Settlement.

1. The Plaintiff's Position

Plaintiff believes that there are no issues of material fact and that she is entitled to judgment as a matter of law. Accordingly, Plaintiff believes that this case can and should be settled on its merits prior to engaging in costly and unduly burdensome discovery.

2. The Defendant's Position

Until discovery has been completed, the defendant cannot intelligently evaluate the possibilities of settlement.

j. Trial. The parties now believe that this case can be resolved on dispositive motions.

k. Special issues regarding electronic case management needs. The parties know of no such issues.

l. Other information. The parties now know of no other information of which the Court should be aware.

Discovery Plan

Paragraph 5 of Appendix A, RCFC, requires the parties to set forth a proposed discovery plan.

At their early meeting, counsel discussed the parties' discovery needs and the way those needs can be satisfied without undue burden. The parties request an initial period of six months

for conducting discovery. On or before the end of the six-month period, if allowed, the parties will file a status report advising the Court whether they need more time for discovery. Upon completion of discovery, the parties will notify the Court that discovery is finished and will propose a schedule for further proceedings.

The plaintiff's attorney has authorized the defendant's attorney to present this document as a joint filing and to add a typewritten representation of his signature to the electronically filed version. The defendant's attorney will retain the signed original for three years, as required by General Order 42A, ¶ 29.

Respectfully submitted,

s/ Glen A. Stankee
GLEN A. STANKEE
RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.
200 East Broward Boulevard, 15th Floor (33301)
Post Office Box 1900
Fort Lauderdale, FL 33302
TEL: (954) 761-2907
FAX: (954) 333-4107
Glen.Stankee@Ruden.com

Attorney for the Plaintiff

s/ Robert Stoddart
ROBERT STODDART
U.S. Justice Department (Tax)
Court of Federal Claims Section
P. O. Box 26, Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440
Robert.C.Stoddart@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

Of Counsel

Attorneys for the Defendant

May 30, 2006