return or in response to an assessment."[4] The Court said "Where a taxpayer admits that it has some liability, but simply dumps funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability, we have no trouble holding that the remittance is not a bona fide payment and should not earn interest." Citing *Reading Co.* and *Hanley v. United States*, 105 Ct. Cl. 638 (1945), the Court said amounts remitted in response to a notice of deficiency were made incident to a bona fide and orderly discharge of the taxpayer's actual or reasonably apparent duties and were not the "dumping of funds" on the Commissioner. Similarly, in *Fisher v. United States,* 28 Fed. Cl. 88 (1993), the Court held that a remittance of the exact amount of a deficiency proposed in a statutory notice of deficiency was not a disorderly remittance or dumping of funds and therefore constituted a payment rather than a deposit.[5]

An estate reports its estate tax liability in either a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, or a Form 4768, Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes. Form 4768 specifically requires that the taxpayer disclose its estimate of estate tax then due. If the remittance does not discharge what the estate declares that it owes in Form 706 or Form 4768, it is a "disorderly remittance" or "dumping of funds" and, therefore, a deposit. In this case it is undisputed that plaintiff never filed Form 4768. Its Form 706 was filed four years after the remittance and no estate tax liability was shown to be due.

3. *There is no requirement that a taxpayer contest a liability where none has been proposed by the IRS in writing.*

---

[4] This, of course, is exactly the opposite of its argument here.

[5] The Court said "It is significant that the taxpayer in *Rosenman* transferred to the I.R.S. an amount that had little relationship to the final amount assessed."

While is should be obvious that a taxpayer can not contest a liability that the IRS has not proposed, defendant argues that the remittance involved here does not constitute a deposit for the very reason that plaintiff did not contest anything at the time of the remittance. The rule which treats remittances of contested liabilities as deposits evolved as an extension of the rule of *Rosenman*. It applies to remittances that discharge liabilities proposed by the IRS. Under a strict reading of *Rosenman,* such remittances would constitute payments. However, in the cases discussed below, the Court held that they constitute deposits where the taxpayer manifests his intention to contest the proposed liability. The rule has no application to remittances that do not discharge liabilities proposed by the IRS. It operates to treat remittances otherwise constituting payments as deposits. Defendant argues that plaintiff's failure to contest a liability that has not been proposed converts a remittance otherwise constituting a deposit into a tax payment.

In *Leich and Northern Natural Gas Co.*, the Court was called upon to determine whether a remittance made in response to a deficiency that was proposed by the defendant was a non-interest bearing deposit, as defendant contended, or a payment as the taxpayer contended. The remittance was held to be a deposit in *Leich* and a payment in *Northern Natural Gas Co.* In *Northern Natural Gas Co.*, the deficiencies were proposed in a statutory notice of deficiency. The remittance was specifically earmarked to the proposed deficiencies that the taxpayer conceded. They paid that portion of the deficiency which the taxpayer did not challenge in its petition to the Tax Court. Since the remittance discharged what the taxpayer admitted to be its liability, it was an orderly remittance and not a "dumping" of funds. As such it constituted "a payment of a liability due and owing upon the acceptance of the Commissioner's redetermination."

In *Leich,* the IRS had proposed specific tax deficiencies, presumably in a 30-day letter, which the taxpayer protested but discharged by payment in full. The IRS conceded the dispute before a notice of deficiency was issued. Because the remittance paid a tax liability that the IRS had proposed in writing, those remittances would have constituted payments under a strict reading of *Rosenman.* The Court said that remittances made under those circumstances are "disorderly remittances" which constitute deposits. In distinguishing *Reading Co.,* the Court said:

> [T]he government [in *Leich*] never made an assessment of tax. Therefore, taxpayer was never required to pay the tax for there was never an obligation imposed by law to pay any tax. The remittances made were entirely voluntary. Thus the factor of no liability was present. Furthermore, it is clear that throughout the entire period taxpayer was contesting the proposed liability. We believe that the factors of 'contest' coupled with the fact of no assessment, are sufficient to negate 'payment' in the instant case.

According to *Leich,* a remittance that was not reported on a return or assessed by the IRS is a deposit, even if it pays a deficiency that the IRS has proposed in writing, provided that the taxpayer manifests his intention to contest that proposed deficiency. In accord is *Cohen v. United States,* 995 F. 2d 205 (Fed. Cir. 1993), *aff'g.* 23 Cl. Ct. 717 (1991), where the Court held that a remittance which discharged a liability proposed by the IRS was a deposit because it was accompanied by a letter in which the taxpayer expressed his intent to contest the liability proposed by the defendant.

Whether the remittance was a deposit or payment in *Leich, Northern Natural Gas Co.* and *Cohen* depended on whether the taxpayer conceded or contested the deficiencies that were proposed by the IRS in writing. It is the contest of the proposed liability that invokes uncertainty and renders an otherwise orderly remittance "disorderly". The issue of "contest" is never reached

in cases where the defendant never proposed a tax deficiency because there is nothing to concede or contest.

Defendant cited the lack of "contest" in an attempt to distinguish *Rosenman.* In *Rosenman,* the letter which accompanied the remittance indicated that the remittance was made under "protest and duress", while the letter which accompanied the remittance in this case did not. However, the executors in *Rosenman* were not protesting a liability that was asserted by the defendant. In *Rosenman,* as here, defendant had not asserted any estate tax liability. The executors protested defendant's refusal to grant an extension of time for payment of the estate tax until the amount of the liability, if any, could be determined. The remittance in *Rosenman* was held to be a deposit because it did not discharge what the taxpayer deemed to be a tax liability or pay a tax liability that was asserted by the IRS. Like the remittance here, it was merely an "interim arrangement to cover whatever contingencies the future might define".

Defendant can not cite a single case or ruling in which a remittance made under the circumstances involved here was held to constitute a payment. It is for that reason that the defendant relies on cases involving estimated income tax payments that are submitted with Form 4868, Application for an Automatic Extension of Time for Filing an Individual Income Tax Return, and wage withholdings which, under section 6513(b), are deemed to have been paid on the last day prescribed for filing the taxpayer's income tax return. Defendant claims that the rules of those cases are broad enough to apply to remittances of estate taxes, but the courts, including the United States Supreme Court, have specifically and consistently distinguished between remittances which are "deemed paid" and those, such as estate taxes which are not. *Baral v. United States,* 528 U.S. 431 (2000). Accordingly, the cases involving estimated income

taxes remitted with Form 4868 and wage withholdings have no application to remittances of estate taxes.

### C. Plaintiff did not intend that the remittance be treated as a payment when made.

Defendant's claim that the estate intended that the remittance be treated as a payment is academic since, under Rev. Proc. 84-58, her intentions are irrelevant to the characterization of the remittance. The operation of Rev. Proc. 84-58 is mechanical and it provides the taxpayer with very little opportunity to influence the characterization of a remittance. It provides that any remittance that does not pay in full a liability proposed by the IRS in writing is necessarily a deposit, regardless of the taxpayer's intent or how or whether it is designated. In fact, the taxpayer's intent is relevant in only two narrow circumstances, neither of which exist here.

If the IRS has proposed a liability in writing and the taxpayer wishes to make a remittance for the entire amount, such remittance will be treated as a payment unless the taxpayer specifically designates it as a "deposit in the nature of a cash bond". If his remittance is less than the entire amount of the liability that the IRS proposed in writing, the entire remittance will be treated as a deposit unless the taxpayer specifically indicates what portion of the liability the remittance is to discharge. If he fails to indicate what portion of the liability is to be discharged by the remittance, the entire amount of the remittance must be treated as a deposit.

Nevertheless, defendant's argument that the estate intended that the remittance constitute a payment and not a deposit is contrary to the undisputed evidence. It is based on nothing more than the facts that (i) Mr. Hamburgh referred to the remittance as a payment in the accompanying letter; and (ii) the remittance was reflected as an "overpayment" and "prior payment" on the estate tax return.

The courts, including the United States Supreme Court, the Federal Circuit and this Court have consistently held that the character of a remittance as a payment or deposit depends on the circumstances and not on meaningless labels and semantics. Even the letter which accompanied the remittance in *Rosenman* referred to the remittance as a "payment". As noted in plaintiff's motion for summary judgment, the defendant commonly refers to remittances as "payments", irrespective of their character as a deposit or a payment. In *New York Life Insurance Company v. United States,* 118 F. 3d 1553 (Fed. Cir. 1997), *aff'g.* 76 AFTR 2d 95-7539 (Ct. Cl. 1995), a remittance was held to constitute a deposit, even though the taxpayer referred to it as a payment no fewer than seven times in the accompanying letter.

The estate's attorney entered the amount of the remittance in the blanks on the federal estate tax return entitled "overpayments" and "prior payments" because the defendant does not provide a blank on the return for "deposits". The "overpayments" and "prior payments" blanks are the only means by which an estate can communicate its entitlement to funds that are in the defendant's possession. Meaningless labels are hardly probative of the plaintiff's intent, particularly where, as here, defendant provides no other alternatives. In any event, the issue in this case involves the character of the remittance at the time it is made. The estate tax return was filed four years later.

Defendant claims that the remittance must have been a payment rather than a deposit because Linda Turcotte entered into a pledge (commonly referred to as an "undertaking) to pay any estate tax liability in excess of the escrowed funds so that the title insurance company would not be liable for any deficiency by reason of omitting the estate tax exception. In connection with that pledge, she executed an affidavit in which she acknowledged, generally, that estates of decedents are obligated to pay estate tax and that the estate's liability may exceed the net

proceeds from the sale of the condominium. Indeed, if the estate had prevailed in every issue that it was then litigating, and for whatever reason none of the expenses of the estate were allowed, the estate's liability for federal, New York and Florida estate taxes, penalties and interest would have exceeded $165,000. Defendant expects the Court to take that statement as an admission that the estate owed at least $165,000 in federal estate tax. Clearly, she did not know, and, at that time, could not have known, how much estate tax, if any, might be owed. It depended on the outcome of the ongoing litigation. It is now known that it owed none. However, even if this statement could be construed as an admission, that would not mean that the remittance was a payment.

In support of its claim that plaintiff intended that the remittance be treated as a payment, Defendant argues that Linda Turcotte could not otherwise have made the statement she made in her affidavit of June 30, 2000. That affidavit was given in connection with the sale by the estate of a property located in Florida. In the affidavit, Ms. Turcotte said that there were no federal, state or county tax deficiencies which could be a lien of judgment affecting title to the property. Defendant claims that this statement proves that the remittance constituted a payment of what Ms. Turcotte believed to be the estate's liability. Defendant has drawn an illogical inference.

If Ms. Turcotte believed that the estate owed no tax and that the remittance was "merely an interim arrangement to cover whatever contingencies the future might define", her statement would be true. If there were a federal estate tax liability, under Rev. Proc. 84-58, the deposit would have been converted to a payment and applied to pay the liability as and when it was assessed. Ms. Turcotte needed only believe that the amount of the deposit, together with what she was willing to pay personally, was sufficient to satisfy whatever tax liability may be owed. In connection with the sale of the condominium in April of 2000, she pledged to pay any portion of

the estate tax which exceeded the deposit. While she could not have known for sure how much tax might be owed, since it would depend on the outcome of ongoing litigation, she had ample basis for believing that it would not exceed $165.000. In any event, her statement referred only to estate tax "deficiencies". "Deficiency" is defined in section 6211 as the amount by which the taxpayer's actual tax liability exceeds the amount shown as a tax on its return, adjusted for prior assessments and rebates. It has nothing to due with what it owed. It is the excess of the actual liability over the admitted liability. If the return she ultimately filed disclosed the entire amount of the actual estate tax liability, there would be no deficiency.

Even if Ms. Turcotte had admitted, erroneously, that the estate owed some amount of estate tax, the remittance would have been a deposit absent some relationship between the amount of the remittance and the amount of the temporarily undetermined liability. In *Northern Natural Gas Co.* the Court said "Where a taxpayer admits that it has some liability, but simply dumps funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability, we have no trouble holding that the remittance is not a bona fide payment and should not earn interest." Even defendant does not venture far enough to allege any relationship between the amount of the remittance ($165,000) and the amount of the temporarily undetermined liability ($0).

Defendant claims on page 4 of its brief that plaintiff needed to remove the lien for estate taxes in order to sell the condominium. The implication is that the remittance must have been a payment because only a payment would eliminate the lien. In fact, whatever lien would have attached to the property for unpaid estate tax was not eliminated by the actions taken in April of 2000. Those actions merely provided for the future payment of the tax that might be due. The condominium was not transferred free of the lien for tax taxes. The lien still existed, but the title

insurance company assumed that liability. If a tax was owed but not paid, the IRS could have proceeded against the condominium. Nothing that was done in April of 2000 changed that. If the IRS proceeded against the condominium, the owners would have had a claim against the title insurance company for the amount of the lien. The title insurance company, in turn, could have compelled the escrow agent to discharge the lien with the escrowed funds. The sole purpose of the escrow was to protect the title insurance company for omitting the exception for estate taxes without having to pay them. If the remittance had to be applied as a payment of estate tax, there would have been no purpose served by the escrow.

Similarly, defendant's claim that Ms. Turcotte instructed her tax lawyer to calculate the tax liability to the best of his ability and to pay it is false and contrary to the undisputed evidence. In the letter upon which defendant relies, Ms. Turcotte directs Mr. Hamburgh and the Florida lawyer to determine who to pay and how much to pay them.

### D. Defendant did not treat the remittance as a payment of estate tax when made.

Defendant claims that the remittance must have been a payment because the IRS coded it as a "670 - subsequent payment". It claims that deposits are never coded in this fashion. Defendant's reliance on the code is misplaced for several reasons. It is not up to defendant to arbitrarily and unilaterally decide whether a remittance constitutes a payment or a deposit. The IRS clerk who assigned the code could not have known all of the facts and circumstances under which the remittance was made and was not likely qualified to determine its character under the controlling authorities.

In any event, defendant clearly did not treat the remittance as a payment of tax as it contends. If defendant had regarded the remittance as a payment of estate tax, it would have coded it 660 (as an estate tax payment), and reflected that treatment on Form 3244-A, Payment

Posting Voucher. Also, it would have assessed the amount of tax that was paid by the remittance under section 6213(b)(4). Even Rev. Proc. 84-58, section 4.03 3, provides that any remittance treated as a payment of tax is to be assessed upon receipt. It is undisputed that no corresponding tax liability was ever assessed in this case.

According to the Internal Revenue Manual and technical internal Document 6209, code 670 is a dumping ground for many types of remittances, including prepayments and subsequent payments, when its character is unknown. Since "prepayments" are defined as remittances made before a return is posted, "subsequent payments" are obviously remittances made subsequent to the posting of the return. Defendant's classification of this remittance as a subsequent payment is patently incorrect. The remittance was made four years before the return was filed. The most logical explanation for coding the remittance as a subsequent payment is that it was given that code only after the return was posted and plaintiff demanded that the remittance be returned.

In fact, defendant often codes deposits, including those specifically designated as deposits, as "670 - subsequent payments". *See, e.g., U.S. v. Tate & Lyle North American Sugars, Inc.*, 90 AFTR 2d 2002-6485 (S.D.N.Y. 2002), *aff'd, U.S. v. Domino Sugar Corp.*, 92 AFTR 2d 2003-6936 (2d Cir. 2003). The manner in which the defendant codes remittances is arbitrary and irrelevant to the determination of whether a remittance is a deposit or a payment. This determination must be made under Rev. Proc. 84-58 and *Rosenman*.

**E. Plaintiff does not rely on the *per se* rule of *Thomas*.**

Defendant represents that it is plaintiff's contention that the Supreme Court decreed that remittances are deposits as a matter of law until a tax is assessed. Perhaps defendant believes that is how plaintiff interprets *Rosenman,* but it is not. Plaintiff never made such a contention. While the Fifth Circuit interpreted *Rosenman* in *Thomas v. Mercantile Nat'l Bank,* 204 F. 2d 943 (5th

Cir. 1953), as holding that all remittances made prior to the actual assessment of a tax liability are deposits *per se,* and this rule continues to apply in the Eleventh Circuit, where the decedent resided at the time of his death, for remittances other than wage withholdings and estimated income tax payments which are subject to the "deemed paid" provisions of IRC §6513(b), *Dantzler v. U.S.,* 183 F.3d 1247 (11th Cir. 1999), the Supreme Court has not directly addressed this issue where taxes, such as estate taxes, that are not deemed paid under section 6513(b), are involved. Defendant devoted a large portion of its brief to the issue of whether a remittance made prior to the assessment of the tax can ever constitute a payment. Plaintiff agrees that it can in some circumstances, but not in these.

The issue upon which defendant has focused is never reached here. Plaintiff 's remittance was a deposit because it did not discharge what the estate deemed to be a tax liability or pay a tax liability that was asserted by defendant. It was merely an "interim arrangement to cover whatever contingencies the future might define". Under *Rosenman, a* remittance made under such circumstances is necessarily a deposit, whether or not any liability was assessed.

Plaintiff's position does not depend on the Court adopting *Thomas' per se* rule. The difference between *Thomas* and Rev. Proc. 84-58 is that *Thomas* treats as a deposit even a remittance that pays in full a tax liability proposed by the defendant if it is made before the tax liability is assessed. Rev. Proc. 84-58 treats a remittance made under those circumstances as a payment. Both *Thomas* and Rev. Proc. 84-58 treat a remittance as a deposit if it is made before a tax liability has been proposed by the IRS in writing.

It is only after mischaracterizing plaintiff's position that defendant can claim that *Northern Natural Gas Co.* and *Leich* oppose it. Those cases recognize that a remittance which discharges an uncontested liability proposed by the IRS can constitute a payment even though it

is made prior to the time that the tax is assessed. In *Fisher* the Court held that a remittance of an amount equal to the tax liability asserted by defendant in a notice of deficiency was a tax payment even though the tax deficiency had not been assessed. However, these cases all hold, like *Rosenman* and its extensive progeny, that a remittance that does not discharge a liability shown to be due on the taxpayer's return or which was proposed by the IRS, is a deposit. This result is also perfectly consistent with Rev. Proc. 84-58 and that urged by plaintiff here. In fact, there has never been a case in which a remittance (other than one which was deemed to be a payment under section 6513(b)) was treated as anything other than a deposit when it did not discharge a liability that was shown to be due on the taxpayer's return or that was proposed by the IRS in writing.

## CONCLUSION

Whether a remittance is a deposit or a payment is often times a close and difficult question. In this case it is not. Defendant's position is totally without legal basis. Each of the many applicable authorities, including *Rosenman, Northern Natural Gas Co., Leich, Fisher, Cohen* and Rev. Proc. 84-58, unequivocally mandates the conclusion that plaintiff's remittance was a deposit and not a payment.

**WHEREFORE,** plaintiff respectfully requests that defendant's motion for summary judgment be denied.

Respectfully submitted,

**RUDEN, McCLOSKY, SMITH**
**SCHUSTER & RUSSELL, P.A.**
Attorneys for Plaintiff
200 East Broward Boulevard, 15th floor (33301)
Post Office Box 1900
Fort Lauderdale, Florida 33302

By: ______________________
Glen A. Stankee, Esquire
Direct Telephone: (954)761-2907
Direct Facsimile: (954) 333-4107