No. 05-1273 T
(Judge Susan G. Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOAN HUSKINS, as personal representative of the
ESTATE OF PHILIP GOLDSTEIN,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
ROBERT STODDART
Attorneys
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, DC 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

**TABLE OF CONTENTS**

*Page*

Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*A. The estate misunderstands Rev. Proc. 84-58, 1984-2 C.B. 501, a revenue procedure that governs remittances made during examinations; it then applies the misunderstood provisions to its own remittance, which was not made during an examination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4*

*B. The estate misunderstands or mischaracterizes the IRS's guidelines for posting remittances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8*

*C. The estate misunderstands Rosenman v. United States and the other relevant case law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11*

*1. Because the estate called its remittance a payment and never contested its liability for tax, the remittance was a payment. . . . . . . . . . . 13*

*2. Because the IRS booked the remittance as a payment, as the estate requested, the remittance is a payment. . . . . . . . . . . . . . . . . . . . . . . . . . 17*

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Appendix I

U.S.C. (1934). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Internal Revenue Manual. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Model Rules of Prof'l Conduct (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Appendix II

Declaration of Robert Stoddart. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Exhibit 1: E-mails between Glen Stankee and Robert Stoddart (May 12-16, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

*Page*

Cases:

*Baral v. United States*, 528 U.S. 431 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 18
*Blatt v. United States*, 34 F.3d 252 (4th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15
*Gabelman v. Commissioner*, 86 F.3d 609 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . 10
*Garcia v. Dep't of Homeland Security*, 437 F.3d 1322 (Fed. Cir. 2006).. . . . . . . . . . . . . . . . . . . 17
*New York Life Insurance Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997).. . . . . . . . . . . 14-15
*Rosenman v. United States*, 53 F. Supp. 722 (Ct. Cl. 1944),
*rev'd*, 323 U.S. 658 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17
*Rosenman v. United States*, 323 U.S. 658 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
*Sorenson v. Sec'y of Treasury*, 557 F. Supp. 729, 734 (W.D. Wash. 1982),
*aff'd*, 752 F.2d 1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986).. . . . . . . . . . . . . . . . . . . 16
*Spezzaferro v. F.A.A.*, 807 F.2d 169 (Fed. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*United States v. Pallan*, 571 F.2d 497 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*United States v. Tate & Lyle North American Sugars, Inc.*, 228 F. Supp. 2d 308 (S.D.N.Y. 2002),
*aff'd sub nom. United States v. Domino Sugar Corp.*, 349 F.3d 84 (2d Cir. 2003).. . 10-11
*VanCanagan v. United States*, 231 F.3d 1349 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . 7, 12, 13, 15
*Zeier v. U.S. IRS*, 80 F.3d 1360 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Statutes:

26 U.S.C. (Internal Revenue Code of 1986):
§ 6213.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
§ 6401.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 6513.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 6511.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10
§ 6603.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
26 U.S.C. (1934):
§ 422.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
American Jobs Creation Act of 2004, Pub. L. No. 108-357,
118 Stat. 1418 (Oct. 22, 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Miscellaneous:

Internal Revenue Manual.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10
Model Rules of Prof'l Conduct (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Rev. Proc. 84-58, 1984-2 C.B. 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 8, 9
Rev. Proc. 2005-18, 2005-13 I.R.B. 798. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1273 T
(Judge Susan G. Braden)

JOAN HUSKINS, as personal representative of the
ESTATE OF PHILIP GOLDSTEIN,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

The defendant, the United States, hereby responds to the Plaintiff's Motion for Summary Judgment (hereinafter Pl. Mot.). The defendant's brief in support of its own motion for summary judgment (hereinafter Def. Mot.) has generally anticipated the arguments set out in the plaintiff's brief. In this response, the defendant will specify the plaintiff's errors of fact and law in more detail and will oppose them with the actual facts and the law as the authorities have actually stated it.

Most of the non-case authorities cited in this brief appear in Appendix A of Def. Mot. The others appear in Appendix I of this brief.

STATEMENT

At pages 1 and 2 of its motion, the estate sketches the factual background of the dispute, but omits much information the Court will need in order to reach a decision. The defendant has set out the necessary facts at pages 2-11 of its own brief and will not repeat them here. The

defendant has also corrected many of the estate's factual mistakes in the defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (hereinafter Def. Resp. to Pl. PF), filed today. Nevertheless, the defendant will mention a few of estate's factual errors and omissions in this response because they underlie some of the estate's legal errors.

First, the estate insists that it could not have known the value of a mortgage until the foreclosure litigation ended. (Pl. Mot. at 2.) This ignorance cannot excuse the estate's failure to file a timely return (*see* Def. Mot. at 2), but from its ignorance the estate infers that it could not have intended its remittance to be a payment toward a tax liability. To this inference it adds assertions that it presents as facts, though they are not facts: When it sold some real property, the estate entered an escrow agreement that prohibited use of the sales proceeds for any purpose other than estate taxes. The estate asserts that "Mr Hamburgh [the estate's tax lawyer] remitted *the entire amount* to the IRS to stop the accrual of penalties and interest on whatever federal estate tax liability might be owed by the Estate. . . . The remittance did not discharge, or bear any relationship to, any amount that plaintiff deemed to be a tax liability." *Ibid*. (emphasis added).

Contrary to the estate's assertion, however, Mr. Hamburgh did not remit "the entire amount" of the sales proceeds to the IRS, and the amount he remitted was not unrelated to the "amount the plaintiff deemed to be a tax liability." In fact, the sales proceeds exceeded $167,000. *See* Defendant's Proposed Findings of Uncontroverted Fact (Def. PF) 28-29. Mr. Hamburgh sent the IRS only $165,000 of the proceeds (Def. PF 29), and he sent that amount after estimating the estate's tax liability *three times*: his first estimate was $245,791–the tax computed on an unreduced gross estate, plus penalties and interest (Def. PF 20); his second estimate was $184,905–the tax computed on a gross estate reduced by a discount to the value of

the mortgage subject to foreclosure litigation (Def. PF 22); and his third estimate was $145,374–the tax, plus penalties, computed on a "hypothetical" estate that was $194,000 less than the estimated gross estate (*see* Def. PF 23). He then sent the IRS a check for $165,000. That remittance was in the midpoint of his two lower estimates–in fact, it was their rounded average (185,000 + 145,000 = 330,000 / 2 = 165,000).

The estate also misleads by omission. It states: "Once the litigation involving the mortgage was concluded, the Estate's federal estate tax liability was determined to be zero. Plaintiff filed a federal estate tax return and demanded the return of the remittance." Pl. Mot. at 2. The estate fails to note, however, that "the litigation involving the mortgage" was settled on February 7, 2002; the judge approved the settlement on March 5, 2002. (Defendant's Proposed Additional Facts 1, filed today; and Def. Resp. to Pl. PF at 13.) The estate had sent the IRS its $165,000 remittance on May 5, 2000, just ten months earlier. (Def. PF 29.) The estate could have claimed a refund of this overpayment–plus interest–any time before May 5, 2003. *See* Code § 6511(b)(2)(A). It had 14 months in which to file a timely claim for refund. Instead, for reasons not yet explained, the estate failed to file a return and to demand what it once recognized as its "overpayment" until November 12, 2004–more than two and a half years after the mortgage litigation ended. (Def. PF 37, 39, 41.) The estate now asks the Court to relieve it from the statute of limitations it ignored for so long.

ARGUMENT

The estate makes many arguments, but it bases them all either upon a misunderstanding of published IRS revenue procedures, upon a misunderstanding of IRS procedures in general, or upon a misunderstanding of *Rosenman v. United States*, 323 U.S. 658 (1945).

*A. The estate misunderstands Rev. Proc. 84-58, 1984-2 C.B. 501, a revenue procedure that governs remittances made during examinations; it then applies the misunderstood provisions to its own remittance, which was not made during an examination.*

The estate begins its argument by misreading Rev. Proc. 84-58, which can be found in Appendix A of Def. Mot., pages 53-58. In particular, the estate relies upon § 4.04 1, which it quotes–in part–at page 4 of its motion. Section 4.04, however, is worth quoting in its entirety (emphasis added):

> .04 Undesignated remittances
>
> 1 Any undesignated remittance not described in section 4.03 made before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a *revenue agent's or examiner's report*), will be treated by the Service as a deposit in the nature of a cash bond. *Such a deposit is not subject to a claim for credit or refund* and the excess of the deposit over the liability ultimately determined to be due will not bear interest under section 6611 of the Code. The taxpayer will be notified concerning the status of the remittance, and may elect to have the deposit returned, without interest, at any time before the issuance of a *revenue agent's or examiner's report*, subject to the provisions of subparagraph 1 of section 4.02.
>
> 2 If the taxpayer leaves an undesignated remittance on deposit *until completion of the examination*, the Service will follow the procedure described in section 4.02.

From these provisions, the estate concludes that its remittance of May 5, 2000, was a deposit in the nature of a cash bond because–at least in the estate's understanding–the remittance was "undesignated," even though the estate often called the remittance a "payment" (Def. PF 29, 39) and sought its return as an "overpayment" (Def. PF 41). According to the estate, "A

'designated' remittance is one that is specifically designated as a deposit. Every other remittance, including one that is specifically designated as a payment, constitutes an 'undesignated' remittance." Pl. Mot. at 3. The estate derives this expansive definition of "undesignated remittance" from a fragment of a sentence found in a *later* revenue procedure, Rev. Proc. 2005-18, § 4.01(2), 2005-13 I.R.B. 798, set out in Appendix A of Def. Mot., pages 59-65. As the defendant has already explained, however (Def. Mot. at 29 n.8), Rev. Proc. 2005-18 was not effective until March 28, 2005 (*id.* § 10, Def. Mot. at 65), and when it came into effect, it superseded Rev. Proc. 84-58 (*id.* § 9, Def. Mot. at 64). The estate cannot contend that the IRS issued Rev. Proc. 2005-18 to supplement or interpret Rev. Proc. 84-58. Furthermore, section 4.01 of Rev. Proc. 2005-18 (Def. Mot at 61) reads as follows (emphasis added):

> SECTION 4. PROCEDURES FOR MAKING DEPOSITS *UNDER SECTION 6603*; TREATMENT OF OTHER REMITTANCES
>
> .01 In General.
> (1) A taxpayer may make a *deposit under section 6603* by remitting to the Internal Revenue Service Center at which the taxpayer is required to file its return, or to the appropriate office at which the taxpayer's return is under examination, a check or a money order accompanied by *a written statement designating the remittance as a deposit.* The written statement also must include:
> (a) The type(s) of tax;
> (b) The tax year(s); and
> (c) The statement described in section 7.02 identifying the amount of and basis for the disputable tax.
>
> (2) Except as provided in sections 4.04(1) and 4.05(3), *a remittance that is not designated as a deposit (an "undesignated remittance") will be treated as a payment* and applied by the Service against any outstanding liability for taxes, penalties or interest.

Such is the reasoning upon which the estate builds much of its case: The estate rips twelve words from their context in Rev. Proc. 2005-18, § 4.01(2) ("a remittance that is not

designated as a deposit (an 'undesignated remittance')"). It then applies this mutilated "definition" to Rev. Proc. 84-58, § 4.04 1 ("Any undesignated remittance . . . made before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a revenue agent's or examiner's report), will be treated by the Service as a deposit in the nature of a cash bond"). Finally, it concludes that its own remittance was a deposit in the nature of a cash bond because the IRS never proposed a liability in writing. *See* Pl. Mot. at 3-4.

To reach this conclusion, the estate must ignore all of the following inconvenient facts: (1) Rev. Proc. 2005-18, § 4.01(2) treats undesignated remittances as *payments*, not as deposits. (2) Rev. Proc. 2005-18 § 4.01(1) recognizes as deposits only remittances that taxpayers designate in writing as deposits. (3) Rev. Proc. 2005-18, § 4, applies only to deposits made under Code § 6603, which Congress adopted in the American Jobs Creation Act of 2004, Pub. L. No. 108-357, Title VIII, § 842(a), 118 Stat. 1418, 1598 (Oct. 22, 2004)–more than four years after the estate made its remittance. (4) The estate insists that Mr. Hamburgh made a "deposit" under Rev. Proc. 84-58, § 4.04 1, which states that "[s]uch a deposit is not subject to a claim for credit or refund." Mr. Hamburgh then filed a claim for refund of the asserted deposit. (Def. PF 41.)

Finally–(5) Rev. Proc. 84-58, § 4.04 applies only to remittances made during or after examinations. *See id.* § 4.04 1 (speaking of an "examiner's report"), § 4.04 2 (referring to the "conclusion of the examination"); *see also id.* § 2.01 ("background" of Rev. Proc. 84-58 includes provisions governing petitions to Tax Court from increased liabilities proposed during examinations); *Baral v. United States*, 528 U.S. 431, 439 n.2 (2000) (emphasis added) (IRS issued Rev. Proc. 84-58 to characterize "remittances of any sort of tax by a taxpayer *under audit*" as either payments or deposits, because payment of a proposed liability would defeat Tax Court

jurisdiction); *Gabelman v. Commissioner*, 86 F.3d 609, 613 (6th Cir. 1996) (Rev. Proc. 84-58 contemplates "situations where the IRS is challenging determinations and representations made by taxpayers," and in such situations, "a taxpayer may very well submit a remittance merely to stop any penalties from accruing"). The Goldstein estate made its remittance more than four years before it filed its return, and the IRS was obviously not examining the return when the remittance was made. Accordingly, the estate cannot rely upon a provision of Rev. Proc. 84-58 that applies only to remittances made during or after examinations.

Furthermore, if the estate is right about Rev. Proc. 84-58, the Federal Circuit must be wrong. In *VanCanagan v. United States*, 231 F.3d 1349 (Fed. Cir. 2000), a taxpayer made what the Goldstein estate would call an "undesignated deposit," but (like the estate) the taxpayer failed to claim a refund within the statute of limitations. The taxpayer (like the estate) then resorted to demanding repayment of its remittance as a "deposit." The Federal Circuit rejected the taxpayer's claim, noting: "[T]he IRS itself has provided procedures and requirements for taxpayers wishing to make such deposits. The IRS merely requires that the taxpayers designate the remittance 'in writing as a deposit in the nature of a cash bond.' Rev. Proc. 84-58, [§ 4.02 1], 1984-2 C.B. 501." *Id.* at 1353.

By contrast, the Goldstein estate insists that the revenue procedure treats all remittances as deposits unless the IRS has proposed a tax liability in writing. *See* Pl. Mot. at 4. In this Court, however, the Federal Circuit's rulings are binding. Accordingly, if a taxpayer wants the IRS (and this Court) to treat a remittance as a deposit, Rev. Proc. 84-58, § 4.02 1 requires the taxpayer to designate the remittance in writing as a deposit in the nature of a cash bond unless the return is

under audit. The estate made no such designation, its return was not under audit, and it cannot claim to have made a deposit under the terms of Rev. Proc. 84-58.

*B. The estate misunderstands or mischaracterizes the IRS's guidelines for posting remittances.*

The defendant has shown that the IRS posted the estate's May 5, 2000, remittance to its account on May 5, 2000, using the code number 670 ("subsequent payment"), which indicates a payment, not a deposit. *See* Def. Mot at 8-9, citing Def. PF 30-31. The estate offers its own explanation of how the IRS treated the remittance at pages 10-11 of its motion for summary judgment. The estate makes several erroneous statements about IRS procedures.

First, without offering factual support, the estate insinuates that the IRS acted in bad faith and coded the May 5, 2000, remittance as a payment only *after* the estate demanded its repayment on November 12, 2004 (Pl. Mot. at 10, emphasis added)–

> Since "prepayments" are defined as remittances made before a return is posted, "subsequent payments" are obviously remittances made subsequent to the posting of the return. Defendant's classification of this remittance is patently incorrect. The remittance was made four years before the return was filed. The most logical explanation for coding the remittance as a subsequent payment is that the *defendant did not apply or characterize the remittance until the return was filed and plaintiff demanded that the remittance be returned*.

As the defendant has already pointed out, however, the IRS uses code 670 to post remittances made before a return is filed as well as after. *See* Def. PF 33. And as the estate knew from an e-mail the defendant's trial attorney sent on May 16, 2006 (attached to this brief), the Internal Revenue Manual explains code 670 in these words: "If return has posted, credits the Tax Module with payment on account. If return has not posted, credits the Tax Module with PREPAYMENT on account." *See* Stoddart Decl. Ex. 1, Appendix II, pages 29-30, *infra*. In the same e-mail, the defendant's trial attorney told the plaintiff's attorney how to research the

Internal Revenue Manual online. *Ibid*. Given its knowledge of the IRS's procedures, there was no reason for the estate to suppose that the IRS coded the estate's remittance as a payment only after the estate filed an untimely claim for refund of an "overpayment." (*See* Def. PF 39, 41.)

To bolster its insinuation that the IRS falsified its official records, the estate again misreads Rev. Proc. 84-58. On page 11 of its brief, the estate insists: "If defendant had regarded the remittance as a payment of tax at the time it was made, it would have assessed the amount of tax that was paid by the remittance under IRC § 6213(b)(4). Even Rev. Proc. 84-58, section 4.03 3, provides that any remittance treated as a payment of tax is to be assessed upon receipt." On the contrary, that section of the revenue procedure provides (emphasis added): "Remittances treated as payments of tax will be *posted* against the taxpayer's account upon receipt, or as soon as possible thereafter, and *may be assessed* provided that the assessment will not imperil a criminal investigation or prosecution." *See also id*., § 3.05 ("[P]ayments will normally be 'posted' rather than 'assessed.'").

In this case, the IRS followed its published procedures to the letter. It posted the estate's remittance to its account as a payment on the date it was received, as the record shows. *See* the certificate of assessments and payments, Stoddart Decl., Ex. 1, Appendix B to Defendant's Brief in Support of its Motion for Summary Judgment at 4, which shows the entry "05-05-2000 SUBSEQUENT PAYMENT 165,000.00. "

"Government officials are presumed to carry out their duties in good faith," and to overcome this presumption, "[u]nsubstantiated suspicions and allegations are not enough. The proof must be almost 'irrefragable.'" *Spezzaferro v. F.A.A.*, 807 F.2d 169, 173 (Fed. Cir. 1986) (citing cases). The courts have equated the necessary "irrefragable proof" with clear and

convincing evidence of some specific intent to injure the plaintiff. *See, e.g., Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004). To show that the IRS did not post its remittance as a payment upon receipt–*i.e.*, that the IRS deliberately falsified its records–the estate has offered only innuendo and misrepresentations of authority.[1]

The estate also attempts to show that the IRS may have posted the remittance upon receipt, but *misposted* it as a payment. To support that proposition, the estate offers only irrelevancies. At page 11 of its motion for summary judgment, the estate says, "Defendant often codes even those remittances that are specifically designated as deposits as 670 'subsequent payments.'" The estate cites a single case, *United States v. Tate & Lyle North American Sugars, Inc.*, 228 F. Supp. 2d 308 (S.D.N.Y. 2002), *aff'd sub nom. United States v. Domino Sugar Corp.*,

---

[1] The estate also implies that the defendant refuses to produce relevant evidence. *See* Pl. Mot. at 10 (emphasis added): "If defendant had regarded the remittance as a payment of estate tax, it would have coded it 660 (as an estate tax payment), and reflected that treatment on Form 3244-A, Payment Posting Voucher. Instead, defendant coded the remittance as a 670 'subsequent payment'. Defendant *continues to refuse plaintiff's request for a copy of Form 3244-A*."

This assertion is false. IRS posting code 660 does not refer to an estate-tax payment. It reflects an "Estimated Tax" or a "Federal Tax Deposit." *See* the extract from the Internal Revenue Manual in Appendix I, *infra*. The estate offers no support for the assertion that an agent would have completed a Form 3244-A. Furthermore, the defendant has never refused the estate's request for a copy of Form 3244-A. The plaintiff's attorney did request a copy in an e-mail (*see* Appendix II, page 29, *infra*), but the defendant's trial attorney could find no such document in the IRS's case files, which are now in his possession and which should be complete. He asked his IRS contact to search for a "Form 3244-A," but the IRS has sent no copy. *See* Stoddart Decl., Appendix II, pages 27-28, *infra*.

The IRS posted the estate's remittance more than six years ago. The relevant statute of limitations is three years. *See* Code § 6511(a). The statute is meant in part to prevent litigation that begins after possibly relevant documents have been lost. *See, e.g.,United States v. Pallan*, 571 F.2d 497, 500-01 (9th Cir. 1978). If the Form 3244-A has any relevance to this case–a proposition the estate has not proved–it is too late for the estate to complain that the document has not been found.

349 F.3d 84 (2d Cir. 2003) (the estate cites to AFTR 2d for both cases). *Tate & Lyle* cannot support the estate's inference that the IRS "often" miscodes remittances designated as deposits. The district court noted, "The paperwork Babb [the agent] prepared to process the December 1990 remittance contains indicia of both a cash bond and payment of tax. At the time Babb prepared the paperwork, she was new to her position in the Examination Division of the IRS." 228 F. Supp. 2d at 317.

Furthermore, even if the Goldstein estate had proved that the IRS "often" miscodes remittances designated as deposits–instead of proving only that a new agent once made an ambiguous mistake–the proof would not affect the present case. The estate cannot argue and does not argue that it designated its remittance as a deposit.

*C. The estate misunderstands Rosenman v. United States and the other relevant case law.*

At page 6 of its motion for summary judgment, the estate expresses an error that informs much of its argument. It states:

> The Court held [in *Rosenman*] that a remittance which "did not discharge what [the taxpayer] deemed a liability nor pay one asserted [by the IRS]", but which is "merely an interim arrangement to cover whatever contingencies the future might define", is a deposit.[2]

This was not the Supreme Court's holding, as the defendant has shown at length. *See* Def. Mot. at 12-15. In fact, what the estate quotes from the *Rosenman* opinion is not the holding–it is part of the case's factual background. *See Rosenman*, 323 U.S. at 662. As the Supreme Court later explained, it "rejected the Government's argument [in *Rosenman*] that payment occurred when the remittance of estimated estate tax was made . . . *only* because it was

---

[2] The defendant added the first parenthetical to this sentence; the other two appear in the estate's brief.

not in accord with the 'tenor' of the 'business transaction.'" *Baral*, 528 U.S. at 438 (emphasis added) (quoting *Rosenman*, 323 U.S. at 663).[3]

The Court found the terms of *Rosenman*'s "business transaction" in the words and actions of the parties. The taxpayer sent its remittance with a cover letter stating: "This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Rosenman*, 323 U.S. at 660. On the other side of the "business transaction," the IRS kept the remittance in a suspense account and did not post the remittance as a payment because the Rosenman estate had sent the remittance "solely" to avoid penalties and interest. The IRS knew that the remittance was not meant to pay what the estate considered to be a tax liability, and the IRS acted accordingly.

In the present case, the Goldstein estate carefully estimated its tax liability (Def. PF 19-23) and sent the IRS a remittance that it called a "payment" in its cover letter (Def. PF 29), on its return (Def. PF 39), and in later oral and written communications (Def. PF 41). Consequently,

---

[3] The estate asserts that the Supreme Court treated the remittance in *Baral* as a payment only because it accompanied an IRS Form 4868, a request for an extension of time to file an income tax return. Under Code § 6513(b), income tax is "deemed paid" on the date the return is due. The Supreme Court did distinguish *Rosenman* from *Baral* on the ground that estate taxes, unlike income taxes, are not "deemed paid" on any particular day (*Baral*, 528 U.S. at 438); but in the same paragraph the Court stated that it found the remittance in *Rosenman* to be a deposit "only" because of the tenor of the parties' "business transaction."

Similarly, the estate asserts that the Federal Circuit treated a remittance as a payment in *VanCanagan* only because the remittance accompanied a Form 4868. *See* Pl. Mot. at 9. The Federal Circuit would disagree. It stated, "We need not determine whether a remittance that accompanies Form 4868 is of an estimated income tax within the meaning of section 6513, since we conclude that *even when analyzed under the principles of Rosenman*, the remittance here was a payment rather than a deposit." 231 F.3d at 1352-53 (emphasis added). As the defendant has shown (Def. Mot. at 27-28), the present case is materially indistinguishable from *VanCanagan.*

the IRS treated the remittance as a payment, not as a deposit. (Def. PF 30-33.) This is the "business transaction" between the IRS and the Goldstein estate. The estate now argues that all of these facts are irrelevant. *See* Pl. Mot. at 5-10. The estate is wrong. In this circuit, the character of a remittance depends upon the particular circumstances under which it was made. *See, e.g., VanCanagan*, 231 F.3d at 1353. The words and actions of the taxpayer and the IRS can never be irrelevant.

*1. Because the estate called its remittance a payment and never contested its liability for tax, the remittance was a payment.*

As the Supreme Court stressed, the Rosenman estate protested that it owed no tax in the amount of its remittance. Unlike the Rosenman estate, the Goldstein estate made no such protest. The Goldstein estate asserts that "[t]his distinction is immaterial" (Pl. Mot. at 7), but the estate bases its assertion upon an imaginative reading of *Rosenman*. In the Goldstein estate's view, the Rosenman estate did not really protest that it owed no tax in the amount of its remittance; instead, "[t]he executors protested the *fact* that defendant rejected their request for an extension of time for payment of the estate tax and insisted on payment before the amount of the liability, if any, could be determined." Pl. Mot. at 7 (emphasis added).

The Goldstein estate did not find this "fact" in the *Rosenman* opinion. The Supreme Court noted that the Rosenman estate received an extension of time in which to file its estate-tax return, but "there was no extension of the time for payment of the tax which became due one year after the decedent's death, on December 25, 1934." *Rosenman*, 323 U.S. at 659. The Court was stating what the relevant statute provided: "The tax imposed by this subchapter shall be due and payable one year after the decedent's death." 26 U.S.C. § 422(a)(1) (1934), set out in Appendix I, *infra*.

The IRS did have authority to extend the date of payment, upon request, if timely payment "would impose undue hardship upon the estate" (§ 422(a)(2)), but the Supreme Court's opinion never even hints that the executors had requested such an extension. The Court of Claims's opinion quotes the letter in which Commissioner granted the Rosenman estate's extension request. He states the truism that an extension of time to file is not an extension of time to pay, but he does not deny the executors' "request for an extension of time for payment of the estate tax" because they made no such request. *See Rosenman v. United States*, 53 F. Supp. 722, 726 (Ct. Cl. 1944). The Goldstein estate has simply invented a request by the executors and a denial of that request by the IRS.

The Rosenman estate protested that it owed no tax–not that the IRS had denied a request for an extension of time to pay the tax–and the Supreme Court grounded its decision, in part, upon that protest. By contrast, the Goldstein estate never contested its liability to pay any part of its remittance. This difference in the facts cannot be imagined away.

This difference in the facts also demonstrates that the Goldstein estate cannot rely upon two cases it cites in its brief: *New York Life Insurance Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997) (cited at Pl. Mot. 5), and *Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993) (cited at Pl. Mot. 7). In *Cohen*, the Federal Circuit announced a new rule: "The remittance made by the Cohens, under protest, after a notice of deficiency but in clear circumstances of contest prior to expiration of the period for assessment, was a deposit *as a matter of law*." 995 F.2d at 209 (emphasis added). The Federal Circuit repeated that holding in *New York Life*, which it found factually indistinguishable from *Cohen*. *See* 118 F.3d at 1559. The defendant believes that *New York Life* and *Cohen* were both wrongly decided, that they are inconsistent with *Baral*, and that

the Federal Circuit itself has now reinterpreted them. *See VanCanagan*, 231 F.3d at 1353 (citing *New York Life* and *Cohen* for the proposition that "the particular circumstances" determine whether a remittance is a payment or a deposit–not that certain remittances are deposits as a matter of law). But even if *New York Life* and *Cohen* can still transform designated payments into deposits "as a matter of law," their holdings could apply only when a taxpayer contests its liability. They cannot apply to this case because the Goldstein estate never contested its liability.

Furthermore, the Goldstein estate did not merely fail to contest liability for tax in the amount of its remittance–it affirmatively called its remittance a "payment" in a cover letter: "This payment is to be applied to the estate tax on the estate of the above-named decedent." (Def. PF 29.) And in its estate-tax form (Form 706) it listed the $165,000 remittance on a schedule of "Prior Payments." (Def. PF 39.) The Goldstein estate's words are part of its "business transaction" with the IRS, as the case law demonstrates. For example, the Ninth Circuit found an estate's remittance to be a payment and noted the following facts as relevant (*Zeier v. U.S. IRS*, 80 F.3d 1360, 1364 (9th Cir. 1996))–

> Moreover, regardless of what the estate's representatives said in their 1992 affidavits [submitted during litigation], when the estate made its remittances in 1984 it described them as "payments," not deposits. The March 28, 1984 letter stated that the $30,000 check was "payment of the estimated federal estate tax." Likewise, in its July 16, 1984 Form 706 the estate placed the $30,000 remittance in the category of "prior payments."

The Goldstein estate cannot disavow what it said, but to weaken the effect of its words the estate now contends that the word "payment" is inherently ambiguous. After consulting a dictionary, the estate concludes that "'Remittance' and 'payment' are clearly synonyms"; and from this linguistic ambiguity the estate derives a novel legal principle for which it cites no

authority: "The rules that characterize remittances are unconcerned with such meaningless labels and semantics." Pl. Mot. at 5.

The defendant has cited authority enough to show that the word "payment" is not meaningless when applied to a remittance of taxes. *See, e.g., Zeier, supra.* And when a tax lawyer like Mark S. Hamburgh calls a remittance a "payment" and demands its return as an "overpayment," he must know what he is saying. "'Overpayment' is a term of art." *Sorenson v. Sec'y of Treasury*, 557 F. Supp. 729, 734 (W.D. Wash. 1982), *aff'd*, 752 F.2d 1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986). The Goldstein estate had several lawyers, but Mr. Hamburgh was the lawyer it specifically hired to prepare its tax forms. (*See* Def. PF 12, 13, 28.) In light of this fact, the defendant cannot understand the complaint the estate makes at page 5 of its brief: "Defendant argues that, in referring to the remittance as a 'payment', plaintiff purposely designated the remittance as a payment of tax and not a deposit. This argument is predicated on the preposterous assumption that plaintiff was mindful of the highly technical distinction that Rev. Proc. 84-58 draws between deposits and payments." The defendant finds it not at all preposterous to suggest that an estate's tax lawyer was mindful of that distinction when making an advance remittance toward an estate tax. *See* Model Rules of Prof'l Conduct R. 1.1 cmt. [1] (2004), Appendix I, *infra*.

Nevertheless, the estate is correct that the word "payment" can be ambiguous. In particular, if the words "paid" and "overpayment" could have only their colloquial sense in Code § 6401(c), the statute might be misconstrued: "An amount paid as a tax shall not be considered not to be an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid." The defendant has explained at length how this statute affects the

Goldstein estate's claim. *See* Def. Mot. at 12-18. Because "payment" can have a technical meaning that is not in general use, the statute must be understood in light of its legislative history. *See, e.g., Garcia v. Dep't of Homeland Security*, 437 F.3d 1322, 1350 (Fed. Cir. 2006) (citing cases). The legislative history demonstrates that the estate's remittance was a payment. *See* Def. Mot. at 19.

*2. Because the IRS booked the remittance as a payment, as the estate requested, the remittance is a payment.*

In *Rosenman*, the Supreme Court held the IRS to its own characterization of the remittance: the IRS had kept the money in a suspense account as a deposit, and the remittance was accordingly a deposit. "Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Rosenman*, 323 U.S. at 662. In the present case, however, the IRS booked the estate's remittance as a payment, not as a deposit, because the estate did not ask the IRS to treat its remittance as a deposit. (*See* Def. PF 33.) Under the reasoning of *Rosenman*, the remittance is a payment.

The Goldstein estate, however, finds the IRS's treatment of the remittance to be just as irrelevant as its own characterization of the remittance. *See* Pl. Mot. at 10. And the Goldstein estate is just as wrong about the legal effect of the IRS's treatment of the remittance as it is about the legal effect of its own characterization. The Court of Claims shared the Goldstein estate's view of the IRS's actions and stated, "The fact that the Collector put the money in a suspense account to the credit of the executors seems to us immaterial." *Rosenman*, 53 F. Supp. at 727. The Court of Claims was reversed.

The Supreme Court characterizes remittances as payments or deposits according to the "tenor" of the "business transaction" between the taxpayer and the IRS. *See Baral*, 528 U.S. at 438. Such transactions have two parties, and the actions of both determine the character of the remittance. *Rosenman* turned at least in part on the IRS's decision to hold the remittance in a suspense account, as the courts have recognized. *See, e.g., Blatt v. United States*, 34 F.3d 252, 254 (4th Cir. 1994) (emphasis added) ("*Largely because the IRS placed the money in a non-interest bearing 'suspense account' from which money was later drawn to pay tax obligations*, the remittance was held [in *Rosenman*] to constitute a deposit, and not a payment of taxes"). The Goldstein estate cannot seriously argue that the IRS's treatment of the remittance is irrelevant.

CONCLUSION

For the reasons given in its briefs, the defendant asks the Court to dismiss the complaint with prejudice.

Respectfully submitted,

s/ Robert Stoddart

ROBERT STODDART
U.S. Justice Department, Tax Division
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

s/ David Gustafson

November 16, 2006