Appendix I

# THE CODE OF THE LAWS

OF THE

# UNITED STATES OF AMERICA

OF A GENERAL AND PERMANENT CHARACTER

IN FORCE

## JANUARY 3, 1935

1934 EDITION

---

CONSOLIDATED, CODIFIED, SET FORTH, AND PUBLISHED IN 1935
IN THE ONE HUNDRED AND FIFTY-NINTH YEAR
OF THE REPUBLIC

[WITH ANCILLARIES AND INDEX]

U.S. DEPT. OF JUSTICE
JUN 11 1986
TAX LIBRARY

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1935

whichever is lower) of so much of the property which constituted the gift as is included in the gross estate, bears to the value of the entire gross estate.

(B) For the purposes of paragraph (A), the amount of tax paid for any year under chapter 4 with respect to any property shall be an amount which bears the same ratio to the total tax paid for such year as the value of such property bears to the total amount of net gifts (computed without deduction of the specific exemption) for such year. (Feb. 26, 1926, c. 27, § 301, 44 Stat. 70; June 6, 1932, c. 209, § 801, 47 Stat. 278.)

**(b) Estate, succession, legacy, and inheritance taxes.** The tax imposed by section 410 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent). The credit allowed by this subsection shall not exceed 80 per centum of the tax imposed by section 410 (after deducting from such tax the credits provided by section 413 (a) (2)), and shall include only such taxes as were actually paid and credit therefor claimed within four years after the filing of the return required by section 421 or 464, except that—

(1) If a petition for redetermination of a deficiency has been filed with the Board of Tax Appeals within the time prescribed in section 471, then within such four-year period or before the expiration of 60 days after the decision of the Board becomes final.

(2) If, under section 422 (a) (2) or section 471 (h), an extension of time has been granted for payment of the tax shown on the return, or of a deficiency, then within such four-year period or before the date of the expiration of the period of the extension.

Refund based on the credit may (despite the provisions of sections 510 to 512, inclusive), be made if claim therefor is filed within the period above provided. Any such refund shall be made without interest. (Feb. 26, 1926, c. 27, § 301 (b), 44 Stat. 70; June 6, 1932, c. 209, § 802, 47 Stat. 278.)

SUBPART II.—RETURNS AND PAYMENT OF TAX

**§ 420. Executor's notice.** The executor, within two months after the decedent's death, or within a like period after qualifying as such, shall give written notice thereof to the collector. (Feb. 26, 1926, c. 27, § 304 (a), 44 Stat. 74.)

**§ 421. Returns—(a) Requirement—(1) Returns by executor.** In all cases where the gross estate at the death of the resident decedent exceeds $100,000, the executor shall make a return under oath in duplicate, setting forth (1) the value of the gross estate of the decedent at the time of his death; (2) the deductions allowed under section 412; (3) the value of the net estate of the decedent as defined in section 412; and (4) the tax paid or payable thereon; or such part of such information as may at the time be ascertainable and such supplemental data as may be necessary to establish the correct tax.

**(2) Returns by beneficiaries.** If the executor is unable to make a complete return as to any part of the gross estate of such decedent, he shall include in his return a description of such part and the name of every person holding a legal or beneficial interest therein, and upon notice from the collector such person shall in like manner make a return as to such part of the gross estate. (Feb. 26, 1926, c. 27, § 304, 44 Stat. 74.)

**(b) Time for filing.** The return required of the executor under subsection (a) shall be filed at such times and in such manner as may be required by regulations made pursuant to law. (Feb. 26, 1926, c. 27, § 304 (a), 44 Stat. 74.)

**(c) Place for filing.** The return required of the executor under subsection (a) shall be filed with the collector of the district in which was the domicile of such decedent at the time of his death. (Feb. 26, 1926, c. 27, §§ 300 (d), 304 (a), 44 Stat. 69, 74.)

**(d) Records, statements, and returns.** Every person liable to any tax imposed by this subchapter, or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe. (Feb. 26, 1926, c. 27, § 1102 (a), 44 Stat. 112.)

General provisions relating to returns, see the following sections—

(1) Notice requiring records, statements, and special returns, section 1503.

(2) Returns executed by taxpayer, section 1511.

(3) Returns executed by Commissioner or collector, section 1512.

(4) Verification and making of returns by Commissioner, section 1514.

(5) Summons from collector to produce books and give testimony, section 1515.

(6) Restrictions on examination of taxpayers, section 1521.

(7) Authority to administer oaths, take testimony, and certify, section 1522.

(8) Extension of time of filing returns, section 1524.

**§ 422. Payment of tax—(a) Time of payment—(1) General rule.** The tax imposed by this subchapter shall be due and payable one year after the decedent's death. (Feb. 26, 1926, c. 27, § 305 (a), 44 Stat. 74.)

**(2) Extension of time.** Where the Commissioner finds that the payment on the due date of any part of the amount determined by the executor as the tax would impose undue hardship upon the estate, the Commissioner may extend the time for payment of any such part not to exceed eight years from the due date. In such case the amount in respect of which the extension is granted shall be paid on or before the date of the expiration of the period of the extension, and the running of the statute of limitations for assessment and collection, as provided in section 474, shall be suspended for the period of any such extension. If an extension is granted, the Commissioner may require the executor to furnish a bond in such amount, not exceeding double the amount in respect of which the extension is granted, and with such sureties as the Commissioner deems necessary, conditioned upon the payment of the amount in respect of which the extension is granted in accordance with the terms of the extension. (Feb. 26, 1926, c. 27, § 305 (b), 44 Stat. 74; June 6, 1932, c. 209, § 808 (a), 47 Stat. 282.)

**(b) Liability for payment.** The tax imposed by this subchapter shall be paid by the executor to the collector. (Feb. 26, 1926, c. 27, § 305 (a), 44 Stat. 74.)

Extension of time in case of future interests, see Supplement F.

**§ 423. Duplicate receipts.** The collector shall grant to the person paying the tax duplicate receipts, either of which shall be sufficient evidence of such payment, and shall entitle the executor to be credited and allowed the amount thereof by any court having jurisdiction to audit or settle his accounts. (Feb. 26, 1926, c. 27, § 313 (a), 44 Stat. 79.)

**§ 424. Examination of return and determination of tax.** As soon as practicable after the return is filed the Commissioner shall examine it and shall determine the correct amount of the tax. (Feb. 26, 1926, c. 27, § 306, 44 Stat. 74.)

**§ 425. Discharge of executor from personal liability.** If the executor makes written application to the Commissioner for determination of the amount of the tax and discharge from personal liability therefor, the Commissioner (as soon as possible, and in any event within one year after the making of such application, or, if the application is made before the return is filed, then within one year after the return is filed, but not after the expiration of the period prescribed for the assessment of the tax in sections 474 and 475) shall notify the executor of the amount of the tax. The executor, upon payment of the amount of which he is notified, shall be discharged from personal liability for any deficiency in tax thereafter found to be due and shall be entitled to a receipt or writing showing such discharge. (Feb. 26, 1926, c. 27, § 313 (b), 44 Stat. 79.)

# Section 8. Master File Codes

## .01 *Transaction Codes* IRM 3(27)(68)(12).4

Transaction Codes (TC) consist of three digits. They are used to identify a transaction being processed and to maintain a history of actions posted to a taxpayer's account on the Master File. Every transaction processed by ADP must contain a Transaction Code to maintain Accounting Controls of debits and credits, to cause the computer at NCC to post the transaction on the Master File, to permit compilation of reports, and to identify the transaction when a transcript is extracted from the Master File. Transaction codes that are unique to IDRS are also included.

Many BMF and IMF Transaction Codes will *not* be used for IRAF. Also, the definitions of several transaction codes are necessarily changed since there will be no resequencing, offsetting, or computer generated interest. In addition, all refunds will be scheduled manually with the refunds posted to the IRAF using TC 840.

**Reversal Codes**

An "R" following the transaction code indicates the transaction has been reversed.

Payment or penalty transaction codes with reversal code "3" which are NOT LISTED in this section are actually reversal code "0" transactions. For programming purposes, the "0" has been converted to "3" to indicate the original payment or penalty transactions (or portion of it) which has been reversed. However, for account analysis purposes, the "3" reversal code should be considered as "0".

All transaction codes currently in use are listed on the following pages. Abbreviations used under the heading FILE are as follows: IMF "I", BMF "B", EPMF "E" and IRAF "A". EPMF may be shown twice for certain entity TC. For doc. code 63, they are applied to the entity module; for doc. code 64, applied to the plan data module.

| TRANS CODE | DR/CR | FILE | TITLE | VALID DOCUMENT CODE | REMARKS |
|---|---|---|---|---|---|
| 000 | | I/B/E | Establish an Account | BMF: 04 or 63 80, 81 IMF: 63 EPMF: 04, 30, 33 36, 37, 38, 39, 63 IRAF: 63 | Adds a new taxpayer entity to the applicable Master File. BMF—Generates TCMP Code. IMF— Establishes Power of Attorney and Scrambled SSN Indicator. |
| | | E | Establish Plan | 64 | Establish a Plan Data module. |
| 001 | | B/E | Resequence an Account due to a TIN Change | Generated Transaction | Requences an account to a different TIN. Generated when TC 011, 040, or 041 posts. Carries old TIN as reference. |
| 001 | | E | Resequence due to Plan Number change | Generated Transaction | Resequences a plan data module due to a plan number change. Carries old plan number as reference. Generated by Doc code 64 transaction. |
| 001 | | I/A | Resequence an Account | Generated Transaction | Resequences an account because of an SSN change or a change in SSN validity. |
| 002 | | B/A/E | TIN Change Failed to Resequence | Generated Transaction | Account did not meet merge criteria. Restores entity and tax modules to the MF that were processed as TC 001. |

| | | | | | |
|---|---|---|---|---|---|
| 652 | Debit (PJ) | B | Correction of 650 Processed In Error Correction of FTD Posted In Error | 24,34 97 | (Prior to FTD) Reverses TC 650 in whole or in part by debiting the Tax Module. (FTD) Debits Tax Module for Federal Tax Deposit posted in error when MFT is 01,03,09,10,11, or 34. |
| 660 | Credit (PJ) | I,B,A | Estimated Tax | 24,58 I/B: 34 | Credits tax module for amount of Estimated Tax paid. BMF/IMF: Credit is frozen from refunding or offsetting until a TC 590/591 (BMF only) or a TC 150 posts. See TC 430. Applicable to Forms 990C,1040 and 1120 only. IMF: When posted after settlement and a TC 416 is present (indicating that ES credits were paid to a Non-ADP DO), generates a TC 417 debit transaction for the net of TC 41X amounts. (Prior to 1-1-67 this TC was treated only as ES Payment.) |
| 660 | CR (PJ) | B | Federal Tax Deposit | 97 | Identifies initial input at NCC of all Federal Tax Deposit credits received from Treasurer, U.S. or Service Center when MFT is 02, 12, or 33. Credits module for amount of Federal Tax Deposit. |
| 661 | Debit (PJ) | I/B | ES Payment or FTD Check Dishonored | 24,58,87 BMF only: 97 | Records a dishonored check issued as an Estimated Tax Payment and reduces ES credits in whole or in part. BMF/IMF will not unfreeze module. Doc. Code 97 identifies the debit as a Federal Deposit dishonored check transaction input by the U.S. Treasury or S.C. if not accompanied by secondary TC 280, TC 286 is generated. |
| 662 | Debit (PJ) | I/B | Correction of 660 Processed in Error | 24,58,87 I/B: 34 B: 97 | Reverses a TC 660 or TC 666 in whole or in part by debiting the module. IMF/BMF may reverse TC 430 remittance amount. BMF only: Doc. Code 97 identifies the debit as a Federal Tax Deposit correction input by the U. S. Treasury or S. C.. IMF only: Records the transfer of underclaimed ES Credits which are frozen: document Code 24 or 34 indicates the credits have been transferred to another account: the amount of the transaction is debited to the Tax Module and any balance is unfrozen: reverses the TC 430 remittance amount: TC 662 in zero amount releases frozen excess ES credits. |
| 666 | Credit (NPJ) | I | Estimated Tax Credit Transfer In | Generated Transaction | When taxpayer claims more ES credits than are posted in his tax module, settlement is frozen and a TC 667 is generated and resequenced to search the spouse's tax module. TC 666 .represents the amount of ES credits transferred-in |

2004 EDITION

# MODEL RULES *of* PROFESSIONAL CONDUCT



CENTER FOR
PROFESSIONAL
RESPONSIBILITY

ABA Defending Liberty Pursuing Justice
AMERICAN BAR ASSOCIATION

response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence. Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter. A number of Rules require that a person's consent be confirmed in writing. See Rules 1.7(b) and 1.9(a). For a definition of "writing" and "confirmed in writing," see paragraphs (n) and (b). Other Rules require that a client's consent be obtained in a writing signed by the client. See, e.g., Rules 1.8(a) and (g). For a definition of "signed," see paragraph (n).

*Screened*

[8] This definition applies to situations where screening of a personally disqualified lawyer is permitted to remove imputation of a conflict of interest under Rules 1.11, 1.12 or 1.18.

[9] The purpose of screening is to assure the affected parties that confidential information known by the personally disqualified lawyer remains protected. The personally disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter. Additional screening measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other materials relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened lawyer relating to the matter, denial of access by the screened lawyer to firm files or other materials relating to the matter and periodic reminders of the screen to the screened lawyer and all other firm personnel.

[10] In order to be effective, screening measures must be implemented as soon as practical after a lawyer or law firm knows or reasonably should know that there is a need for screening.

## *CLIENT - LAWYER RELATIONSHIP*

### RULE 1.1: COMPETENCE

**A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.**

**Comment**

*Legal Knowledge and Skill*

[1] In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances, the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.

[2] A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.

[3] In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client's interest.

[4] A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also Rule 6.2.

*Thoroughness and Preparation*

[5] Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence. An agreement between the lawyer and the client regarding the scope of the representation may limit the matters for which

Appendix II

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1273 T
(Judge Susan G. Braden)

JOAN HUSKINS, as personal representative of the
ESTATE OF PHILIP GOLDSTEIN,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DECLARATION OF ROBERT STODDART

I, Robert Stoddart, am the attorney assigned by the Department of Justice to defend this case. I make this declaration of my personal knowledge.

1. During my work on this case I received the files maintained by the Internal Revenue Service for the estate-tax account of the Estate of Philip Goldstein. Those files contain no Form 3244-A.

2. The attached Exhibit 1 is a printout of a series of e-mails that I sent to and received from the plaintiff's attorney, Glen Stankee, between May 12 and May 16, 2006. I made the printout on May 16, 2006, and inserted it into my case files. The messages appear in reverse chronological order. The printout is a true and exact record of the e-mails. I added only one notation, "Ask IRS", which appears on the first page of the exhibit.

3. On May 24, 2006, I asked my contact at the IRS to look for any Form 3244-A that might be associated with the estate-tax account of the Estate of Philip Goldstein. I have heard nothing further from my IRS contact about that form.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, DC, on November 16, 2006.

ROBERT STODDART

**Stoddart, Robert C. (TAX)**

**From:** Glen.Stankee@ruden.com
**Sent:** Tuesday, May 16, 2006 12:51 PM
**To:** Stoddart, Robert C. (TAX)
**Subject:** RE: New Draft of Goldstein JPSR

Are you able to provide a copy of Form 3244-A, Payment Posting Voucher? Ask IRS

--------------------------------------------------------

IRS Circular 230 Disclosure: Please note that the views expressed herein or in any attachments hereto are not intended to constitute a "reliance opinion" under applicable Treasury Regulations, and accordingly are not intended or written to be used, and may not be used or relied upon, for the purpose of (i) avoiding tax-related penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Glen Stankee
Attorney

Ruden McClosky
200 East Broward Boulevard
Suite 1500
Fort Lauderdale, FL 33301
Direct 954-761-2907 | Fax 954-333-4107
Glen.Stankee@ruden.com | www.ruden.com

EXHIBIT
tabbies
1

NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at 954-764-6660 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.

-----Original Message-----

From: Robert.C.Stoddart@usdoj.gov [mailto:Robert.C.Stoddart@usdoj.gov]
Sent: Tuesday, May 16, 2006 12:28 PM
To: Stankee, Glen
Subject: RE: New Draft of Goldstein JPSR

Dear Mr. Stankee,

I am sorry that I can provide no transcripts printed before December of 2004 because transcripts are not printed before they are requested, and we request no transcripts (from here anyway) before the complaint is filed.

You state that the remittance was mailed on May 5, 2000, and "could not have been received and posted until several days later," but you attached a copy of the check to your complaint (in Exhibit A, the second page after your signature) that bears an IRS stamp stating "RECEIVED with remittance one stop MAY 05 2000." That stamp was certainly applied before December of 2004. It does not seem impossible for the IRS to have posted the remittance as received on the same day it stamped the check as received.

You also state that the entry "subsequent payment" must be "entered subsequent to something." That seems natural to me too--but legal drafting is not always natural. See "Section 8. Master File Codes 1 Transaction Codes" in Document 6209 of the IRM (available on line at http://www.irs.gov/pub/irs-utl/document_6209-2003.pdf--IRM3(27)(68)(12)4 ) Code 670, "Subsequent payment" is described in part as follows (emphasis added): "If return

[1]

has posted, credits the Tax Module with payment on acccount. If return has not posted, credits the Tax Module with PREPAYMENT on account." (If your browser will not open on this page, you can type the following into Google: "Document 6209" IRS "ADP and IDRS Information" The document will be the first cite returned.) You will be able to find explanations for all the codes on the transcript.

Could you please let me know the citation to the Internal Revenue Manual or other authority you refer to as "IRS internal guidelines"?

I have also received your recent version of the joint preliminary status report (JPSR). After I have had a chance to review it, I will prepare a new version for your approval, revising my own contribution if necessary. I may not be get to the task until the end of the week. I may also send some initial discovery--you, of course, may do the same. Two weeks after we file the JPSR we must exchange the information listed in RCFC 26(a)(1). Around that time the Judge will schedule the conference required by Rule 16(b). It would please her to hear that we have been making progress in the meanwhile.

Yours sincerely,

Robert Stoddart

-----Original Message-----
From: Glen.Stankee@ruden.com [mailto:Glen.Stankee@ruden.com]
Sent: Monday, May 15, 2006 11:20 AM
To: Stoddart, Robert C. (TAX)
Subject: RE: New Draft of Goldstein JPSR

Dear Mr. Stoddart:

I can reword plaintiff's position for purposes of the joint stipulation, but I am not convinced that my statement that the defendant treated the remittance as a deposit at all times prior to the filing of the return is inaccurate. This is how the IRS' internal guidelines require that it be treated. As you probably know, the fact that the transcript reflects a "subsequent payment" on May 5, 2000, does not mean that the entry was made on that date. In fact, it certainly was not. The taxpayer mailed the remittance on that date. It could not have been received and posted until several days later. All we can tell from this transcript is that the "subsequent payment" entry was made sometime before January 20, 2006, when the transcript was printed. The fact that the remittance was described as a "subsequent payment" suggests that it was entered subsequent to something - either the filing of the return or, more likely, the disallowance of the claim. The remittance was the first event to occur - it was not "subsequent" to anything. Furthermore, the "subsequent payment" is listed on the transcript after the entry reflecting the filing of the return on December 20, 2004. Section 6213(b)(4) allows that IRS to assess tax equal to the amount of the payment. In that case the tax assessment is the debit and the tax payment is the credit. Accordingly to this transcript, the payment was not applied against a tax assessment. It was applied against a mysterious debit entry entitled "credit transferred". The date of this "credit transferred" debit is also dated May 5, 2000. In short, it is quite clear that the entries in this transcript were entered after the return was filed and the return of the remittance was demanded. It clearly does not reflect the account as it existed between May 5, 2000, and September 12, 2005. We need to have a copy of a transcript for this account that was printed prior to December 20, 2004. Can you provide it?

Glen Stankee

-------------------------------------------------------

IRS Circular 230 Disclosure: Please note that the views expressed herein or in any attachments hereto are not intended to constitute a "reliance opinion" under applicable Treasury Regulations, and accordingly are not intended or written to be used, and may not be used or relied upon, for the purpose of (i) avoiding tax-related penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Glen Stankee
Attorney

Ruden McClosky
200 East Broward Boulevard
Suite 1500
Fort Lauderdale, FL 33301
Direct 954-761-2907 | Fax 954-333-4107
Glen.Stankee@ruden.com | www.ruden.com

NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at 954-764-6660 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.

-----Original Message-----

From: Robert.C.Stoddart@usdoj.gov [mailto:Robert.C.Stoddart@usdoj.gov]
Sent: Friday, May 12, 2006 4:25 PM
To: Stankee, Glen
Subject: New Draft of Goldstein JPSR

Re: Joan Huskins, as personal representative of the Estate

of Philip Goldstein, v. United States,

Fed. Cl. No. 05-1273 T

Dear Mr. Stankee:

Thank you for your contributions to the Joint Preliminary Status Report.

While preparing a new draft, I noticed this sentence: "Defendant did not treat the remittance as a payment of tax pursuant to IRC §6213(b)(4), but properly treated it as a deposit under its own internal guidelines." We have now received the IRS's transcript of account for the estate, a copy of which I enclose. It notes an entry of the remittance as a "subsequent payment," code 670. You may wish to amend the quoted sentence. I have added the new information to our most recent draft, which is also enclosed. I have also tried to eliminate the abundance of fonts.

Sincerely yours,

ROBERT STODDART

Trial Attorney

Court of Federal Claims Section

Enclosures as stated

[3]