IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1273 T
(Judge Susan G. Braden)

JOAN HUSKINS, as personal representative of the ESTATE OF PHILIP GOLDSTEIN,
Plaintiff,
v.

THE UNITED STATES,
Defendant.

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Joan Huskins, as personal representative of the Estate of Philip Goldstein, pursuant to RCFC 56, hereby submits this Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment in support thereof, and states:

**MEMORANDUM OF LAW AND ARGUMENT**

1. **The character of the remittance is governed by Rev. Proc. 84-58.**

In defendant's brief in support of its motion for summary judgment, it claimed on page 2 that "a published IRS revenue procedure . . . governs characterization of remittances as deposits." Although defendant did not refer to the revenue procedure by name of number and did not mention it elsewhere in its brief, presumably defendant was referring to Rev. Proc. 84-58 since it is the only revenue procedure that was effective in 2000 that characterizes remittances as payments or deposits. It is now defendant's position that Rev. Proc. 84-58 has no application to this case because it applies only to remittances made during an examination. At the same time, defendant argues that plaintiff's failure to designate the remittance as a deposit results in it being a payment under Rev. Proc. 84-58. In fact, defendant was right the first time. Rev. Proc. 84-58

does govern the characterization of the remittance involved here, but it characterizes it as a deposit.

Remittances submitted with a return and which pay the amount of tax shown to be due on the return are clearly payments and not deposits. Remittances of amounts in addition to the taxes shown to be due on the return are typically made after the IRS commences an examination. It is the examination that prompts the taxpayer to reconsider the positions taken on the return. There is little incentive for a taxpayer to pay more than what was shown to be due on his return until a deficiency is proposed by the IRS. Remittances made in the throe of battle are the most difficult to characterize. Rev. Proc. 84-58 attempts to identify and deal with issues of character that can arise in those circumstances. It contains rules for characterizing (i) remittances made before a deficiency is proposed by the IRS, (ii) remittances made after a deficiency is proposed by the IRS, but before the notice of deficiency is issued, and (iii) remittances made after the notice of deficiency is issued. It provides rules for applying deposits to as payments of taxes after the examination is completed where a wavier of restrictions on assessments is, and is not, executed.

The provisions of Rev. Proc. 84-58 which apply here are sections 4.03 1. and 4.04 1. Section 4.03 1. provides as follows:

> A remittance not specifically designated as a deposit in the nature of a cash bond will be treated as a payment of tax if [and only if] it is made in response to a proposed liability, for example, as proposed in a revenue agent's or examiner's report, and remittance in full of the proposed liability is made. A partial remittance will not be treated as a partial payment of tax unless the taxpayer specifically designates what portion of the proposed liability the taxpayer intends to satisfy. . . If the Service is unable to determine whether a partial remittance is intended to be a payment of tax or a deposit in the nature of a cash bond, the Service will treat the remittance as a deposit in the nature of a cash bond. . .

There is nothing whatsoever in this provision which limits its applications to remittances made after an examination has begun. Defendant's claim that it applies only to remittances made during an examination is based on nothing more than the reference to the "examiner's report".

While the Rev. Proc. cites the examiner's report as an example of a writing in which the IRS proposes a deficiency, it is wrong to say that Rev. Proc. 84-58 has no application to remittances that are made prior to the commencement of an examination. It applies to all remittances other than those which discharge a liability shown to be due on a return. Defendant does not even attempt to justify a different treatment for remittances made by a taxpayer before he is contacted by an IRS agent and those made immediately thereafter. Remittances made after the examination commences, but before the liability is proposed by the IRS in writing, constitute deposits because the liability is still undefined. A remittance made while the liability is still undefined constitutes a "disorderly" "dumping of funds" on the IRS which always constitutes a non-interest bearing deposit. Remittances made before an examination has commenced are even more "disorderly".

Section 4.04 1. of Rev. Proc. 84-58 provides as follows:

> Any undesignated remittance not described in section 4.03 made before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a revenue agent's or examiner's report), will be treated by the Service as a deposit in the nature of a cash bond.

There is nothing whatsoever in this provision which limits its applications to remittances made after an examination has begun.

What distinguishes a deposit from a payment under all of the applicable case law is whether the remittance is an orderly remittance which discharges an admitted tax liability, or whether it is a "disorderly" dumping of funds on the IRS while the tax liability remains "undefined".[1] If the remittance pays a liability that was proposed by the IRS in writing, it is

---

[1] *See, e,g., Northern Natural Gas Co. v. United States,* 173 Ct. Cl. 881 (1965); *Fisher v. United States,* 28 Fed. Cl. 88 (1993); *Charles Leich and Co. v. United States,* 165 Ct. Cl. 127 (1964). In *Ertman v. United States*, 165 F. 3d 204 (2d Cir. 1999), the court said that, under *Rosenman*, a remittance is classified as a payment or a deposit based on three factors: (1) the timing of the assessment or definition of the liability; (2) the taxpayer's intent with respect to the remittance;

presumed that the taxpayer admits the liability, in which case the liability is "defined", unless he makes it clear that he does not admit owing that amount. Under Rev. Proc. 84-58, he makes it clear that he does not admit the liability by designating the remittance as a deposit in the nature of a cash bond. Under the case law, he makes it clear by protesting the proposed liability or otherwise manifesting his intent to contest it.[2] Consequently, even remittances which pay tax liabilities proposed by the IRS constitute deposits where the taxpayer contests the proposed liability because the liability in those circumstances is still undefined.

In this case, the remittance was indisputably made before the estate tax liability was defined. The remittance did not discharge what was shown to be due on a return or on Form 4768, Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes. The only return plaintiff filed showed that no tax was due. The remittance did not bear any relationship to what might have been the estate's tax liability. The remittance was simply the proceeds from the sale of condominium. It was deposited with the IRS because the estate's only other option was to let the funds sit in Mr. Hamburgh's non-interest bearing IOLA trust account. Based on the assumption that the defendant would comply with Rev. Proc. 84-58 and return (without interest) the portion of the deposit that was not applied to pay estate taxes, it was in the estate's best interest to make the deposit whether or not any estate tax was ultimately owed. If there had been a federal estate tax liability, a deposit would have stopped the accrual of interest and penalties on up to $165,000 of

---

and (3) the IRS' treatment of the remittance upon receiving it. A remittance that is made before the tax is assessed or the liability is "defined" is a deposit. The liability has not been "defined" if it is not shown to be due on a return or proposed by the IRS. Even a liability proposed by the IRS is not "defined" if the taxpayer makes it clear that he disagrees with it.

[2] See, e.g., *Cohen v. United States,* 995 F. 2d 205 (Fed. Cir. 1993), *aff'g.* 23 Cl. Ct. 717 (1991); *New York Life Insurance Company v. United States,* 118 F. 3d 1553 (Fed. Cir. 1997), *aff'g.* 76 AFTR 2d 95-7539 (Ct. Cl. 1995).

that liability from the date it was made. On the other hand, there is little or no incentive for a taxpayer to pay more tax than what he is willingly to admit he owes. Historically, the defendant has contneded that a taxpayer is not entitled to earn interest on the amount by which the remittance exceeds his actual tax liability. *See, e.g., Leich and Northern Natural Gas Co.*

**2. Rev. Proc. 2005-18 is applicable only insofar as it clarifies the definition of a term used in Rev. Proc. 84-58.**

Rev. Proc. 84-58 does not specifically define "undesignated remittance", but it is clear from the context in which it is used that it means any remittance that is not specifically designated as a deposit. This is made abundantly clear by Rev. Proc. 2005-18, which superseded Rev. Proc. 84-58 beginning after October 22, 2004. It specifically defines "undesignated remittance" as "a remittance that is not designated as a deposit". *See,* section 4.01(2). Section 4.03 of both revenue procedures provide identical treatment of remittances which pay in full a liability proposed by the IRS in a revenue agent's report or examiner's report. In Rev. Proc. 84-58, this treatment applies to any "remittance not specifically designated as a deposit" and in Rev. Proc 2005-18, this treatment applies to any "undesignated remittance". Clearly, these two terms have the same meaning.

Under Rev. Proc. 84-58, every remittance is either "designated" or "undesignated". A "designated" remittance is one that is specifically designated as a deposit. Every other remittance constitutes an "undesignated" remittance. Rev. Proc. 84-58 does not offer the taxpayer the option of designating a remittance as a payment except where it discharges only part of a liability that was proposed by the IRS in writing. Evan in those circumstances a remittance will be regarded as a deposit unless the taxpayer clearly indicates what portion of the liability is to be paid by the remittance. If there is any question about his intent, the entire remittance must be treated as a

deposit. Accordingly, a remittance which the taxpayer designates as a "payment" constitutes an "undesignated remittance" under Rev. Proc. 84-58. An undesignated remittance is treated as a payment only if it pays in full a liability proposed by the IRS in writing.

Defendant contends that a remittance that the taxpayer generally refers to as a "payment" in the accompanying letter constitutes a designation of the remittance as a payment for no reason other than the facts that (i) defendant failed to specifically define "undesignated remittance" in Rev. Proc. 84-58, and (ii) Rev. Proc. 2005-18 was not effective in 2000 when the remittance was made. In other words, defendant is attempting to exploit to its advantage its own drafting deficiencies by claiming that they create an ambiguity that should be resolved in its favor. In fact, it is clear from the context of Rev. Proc. 84-58 that an "undesignated remittance" is any remittance not specifically designated as a deposit, and that the taxpayer can not designate any portion of his remittance as a payment if does not pay a liability proposed by the IRS in writing. It is also clear that Rev. Proc. 2005-18 did not effect any substantive change insofar as the definition of an undesignated remittance is concerned.

Plaintiff refers to Rev. Proc. 2005-18 solely for the purpose of resolving the supposed ambiguity in Rev. Proc. 84-58 that defendant is attempting to exploit. Plaintiff denies that any such ambiguity exists, but contends that any ambiguity should be resolved against the author. Since plaintiff does not rely on Rev. Proc. 2005-18 for any other purpose, its effective date is immaterial.[3]

---

[3] In fact, defendant relies on the substantive provisions of Rev. Proc. 2005-18 in arguing that the remittance here constituted a payment since the remittance was not specifically designated as a deposit. While section 4.01(2) provides that undesignated remittances will generally be treated as payments, it recognizes two broad exceptions. One exception, section 4.04(1), provides that a remittance made during an examination, but before a liability is proposed to the taxpayer in writing, will be treated as a deposit. Defendant's statement that "Rev. Proc. 2005-18, § 4.01(2) treats undesignated remittances as payments, not deposits" is overly broad and inaccurate. Defendant does not even attempt to justify its claim that a remittance made immediately before

Plaintiff's application of Rev. Proc. 84-58 is perfectly consistent with Rev. Rul. 89-6, 1989-1 C.B. 119. In that ruling, the IRS considered the issue of when a remittance constitutes a payment, such that the portion consisting of interest may be deducted by an accrual basis corporation. The IRS ruled that only remittances of the entire amount of a liability proposed by the IRS, without contest, will be considered a payment. In all other circumstances, the remittance is considered a deposit and the portion consisting of interest is not deductible.

Defendant contends, erroneously, that section 4.02 1 of Rev. Proc. 84-58 requires the taxpayer to designate the remittance as a deposit in the nature of a cash bond unless the return is under audit. This section speaks to the specific situation in which the IRS has proposed a liability in writing, and the taxpayer makes a remittance prior to the mailing of the notice of deficiency. A remittance which pays in full a liability that was proposed by the IRS in writing is generally treated as a payment under section 4.03 1. However, section 4.02 1 allows a taxpayer to designate such a remittance as a deposit in the nature of a cash bond. If he does so, the IRS will not be able to assess the liability without complying with the deficiency procedures which include issuing a notice of deficiency. This provision is intended to allow the taxpayer to stop the accrual of interest and penalties on whatever deficiency is ultimately determined without sacrificing his right to have that deficiency re-determined by the Tax Court. If the remittance

---

the commencement of an examination constitutes a payment, even though a remittance made immediately after the commencement of an examination, but before a liability is proposed, is a deposit. Rev. Proc. 2005-18 does not support that claim. If all remittances (other than those which discharge a liability shown to be due on a return) made during an examination but before a liability is proposed by the IRS are treated as deposits, then clearly remittances (other than those which discharge a liability shown to be due on a return) made before an examination commences are deposits for the same reason - the liability is "undefined". When the liability is undefined, the remittance is a "disorderly" "dumping of funds" on the IRS which always constitutes a deposit. *See, e.g., Northern Natural Gas Co., Leich,* and *Fisher.* If remittances of an undefined liability were to earn interest, it would "leave the Collector with an ambiguous situation on his hands." *Lewyt v. Commissioner of Internal Revenue,* 215 F. 2d 518, 522 (2nd Cir. 1954), *aff'd in part*, 349 U.S. 237 (1955).

were treated as a payment, the deficiency would be assessed and paid. In that case, the IRS would not issue the notice of deficiency and the taxpayer would have no access to the Tax Court.

Contrary to defendant's representation, section 4.02 1 requires that the taxpayer designate a remittance as a deposit only if it pays in full a liability proposed by the IRS in writing. It has no application where, as here, the IRS has not proposed a liability in writing. Under Rev. Proc. 84-58 sections 4.03 1 and 4.04 1, every remittance that does not pay in full a liability proposed by the IRS in writing is a deposit.

**3. VanCanagan supports plaintiff's position, not defendant's position.**

As plaintiff projected in her initial motion for summary judgment, defendant would ultimately resort to a tortured interpretation of *VanCanagan v. United States,* 231 F. 3d 1349 (Fed. Cir. 2000). Defendant claims, erroneously, that the taxpayer in that case made what the estate would call an "undesignated deposit". The issue in *VanCanagan* was whether remittances of estimated income tax with Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, constitute payments. The Court noted that, in *Baral v. United States,* 528 U.S. 431 (2000), the Supreme Court held that estimated tax payments were deemed paid on the due date of the taxpayer's return under section 6513(b). The Federal Circuit was asked to determine whether remittances which accompany Form 4868 constitute estimated income taxes within the meaning of section 6513(b), but it found that it was unnecessary to do so. Form 4868 requires that the taxpayer disclose what he estimates to be his tax liability for the prior year and to deduct the portion of that tax liability that was previously paid. As a condition of the extension of time for filing the return, the taxpayer is required to pay the balance of that tax liability in full. Form 4868 very specifically characterizes the accompanying remittance as a payment in full of a tax liability that the taxpayer estimates to be due and owing. The Federal Circuit said that a remittance made under these circumstances constitutes a payment under the

principles of *Rosenman* whether or not the remittance also constituted a estimated tax payment within the meaning of section 6513(b).

Most circuit courts, including the Second, Sixth, Ninth, Tenth, and Eleventh Circuits, hold that remittances accompanying Form 4868 constitute payments *per se*[4], but the Federal Circuit rejected the *per se* rule. While a remittance made with Form 4868 is presumptively a payment, a taxpayer may rebut that presumption by a clear expression of his intent that the remittance be treated as a deposit. Since the taxpayer in *VanCanagan* expressed no such intent, the remittance was treated as a payment of tax.

*VanCanagan* would support defendant's claim that the remittance involved here was a payment only if it was accompanied by an extension request such as Form 4768, Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes. Without a Form which specifically discloses an admitted liability and characterizes the remittance as a payment of that liability, a presumption that the remittance is a payment never arises. If the letter that had accompanied the remittance had disclosed an estimated amount of the federal tax liability perhaps *VanCanagan* could be stretched to treat the remittance as a payment of an admitted liability, but it did not. The letter indicated that the estate tax return had not been filed. Clearly, the plaintiff advised the IRS that the estate tax liability, if any, was undefined at the time of the remittance.

*VanCanagan* supports plaintiff's position because it interprets *Rosenman* in exactly the same way that plaintiff interprets it. *VanCanagan* also eliminates any doubt that *Rosenman* continues to govern the characterization of remittances in the Federal Circuit. It dismisses

---

[4] *See, Ertman v. United States Internal Revenue Serv.,* 165 F.3d 204, 208 (2d Cir. 1999); *Gabelman v. Commissioner of Internal Revenue,* 86 F.3d 609, 611-13 (6th Cir. 1996); *Ott v. United States,* 141 F.3d 1306, 1309 (9th Cir. 1998); *Weigand v. United States,* 760 F.2d 1072, 1074 (10th Cir. 1985); *Dantzler v. United States,* 183 F.3d 1247, 1252 (11th Cir. 1999).

defendant's claim that section 6401(c) "nullified" *Rosenman.* (Def. Initial Brief, p. 15). In the Federal Circuit, any remittance that does not discharge a liability shown to be due on the taxpayer's return (or extension form) or a liability proposed by the IRS, but which is merely an "interim arrangement to cover whatever contingencies the future might define" is a deposit.

**4. The IRS codes that are assigned to remittances are irrelevant in determining their character.**

Since the remittance was made before the tax was assessed or the liability was otherwise "defined", the defendant's position depends entirely upon its claim that the defendant coded the remittance as a "670 – subsequent payment." Defendant's reliance on the code assigned to the remittance is misplaced for several reasons.

First, such tax codes are arbitrarily assigned by some IRS clerk having no knowledge of the facts and circumstances under which the remittance was made. That clerk is clearly unqualified to apply the law that governs the classification of remittances. Defendant's suggestion that this court should yield its judgment to that of some unidentified IRS clerk warrants very little serious consideration.

Second, the "670 – subsequent payment" code that was assigned to the remittance in this case is erroneous on its face. A "subsequent payment" is one made after the return is posted. The remittance in this case was made four years before the return was posted. While the "670" code is sometimes assigned to payments, it is also assigned to remittances that are deposits. *See, e.g., United States v. Tate & Lyle North American Sugars, Inc.* 228 F, Supp. 2d 308 (S.D.N.Y.) *aff'd, U.S. v. Domino Sugar Corp.*, 92 AFTR 2d 2003-6936 (2d Cir. 2003) (where the IRS coded a remittance that was specifically designated as a deposit as a ""670 – subsequent payment"). Code 670 is commonly used when the character of the remittance is unknown. Internal Revenue Manual Section 5.1.2.1.4 (01-22-2001), Transaction Codes, a copy of which is attached as

Appendix "A", indicates the circumstances under which code "670" is appropriate. It lists a potpourri of circumstances in which code "670" may be used, but that list does not include estimated estate tax payments.

Third, the defendant clearly did not consider the remittance as a payment. Its own rules specifically require that estimated payments of estate tax remitted in 2000 be coded "660 – estimated tax payment". Internal Revenue Manual Section 5.1.2.1.4 (01-22-2001), Transaction Codes, attached as Appendix A", specifically provides in section 2 E as follows: "ES payments on BMF and NMF modules for Estate Taxes (Form 706) and Gift Taxes (Form 709) - use TC [Transaction Code] 660."

A remittance is posted via a posting voucher such as Form 3244-A, Payment Posting Voucher – Examination. Except in narrow circumstances not present here, the Internal Revenue Manual mandates the preparation of Form 3244-A to post a payment. IRM 5.1.2.1.3. A remittance is characterized by the IRS as a deposit or payment on Form 3244-A, Payment Posting Voucher – Examination. This Form, a copy of which is attached as Appendix "B", specifically indicates that estimated tax payments for Form 706 are to be coded "660".

For purposes of Form 3244-A, "payment" is synonymous with "remittance". Form 3244-A is used to post all payments, including the ones that the IRS regards as deposits. If the IRS had followed its own rules, that Form would exist. It would likely disclose how the IRS initially regarded the remittance. Unfortunately, the defendant claims that it can not be produced.

If the defendant had regarded the remittance as a payment, it would have assessed the tax liability that the remittance paid under section 6213(b)(4). No estate tax was ever assessed because the taxpayer had not filed a return showing any amount due. It is for that reason that remittances that do not discharge a tax shown to be due on the taxpayer's return (or proposed by the IRS) necessarily constitute deposits. The account was zeroed out by a mysterious debit coded

"820 – Credit transferred" dated May 5, 2000. The destination of the transfer is not disclosed in the transcript. Suspiciously, the defendant purportedly transferred the credit on May 5, 2000, the same date as the remittance. That is not how estimated tax payments are handled. The debit would be the tax liability that was paid by the remittance. In any event, the "Credit transferred" entry appears on the transcript after the entry reflecting receipt of the return on December 20, 2004. In fact, receipt of the return is the first item listed in the transcript. This illustrates how the transcript can be manipulated by the defendant with impunity to serve its own purposes at any time. Accordingly, the transcript is utterly without probative value as "evidence" of the defendant's treatment of the remittance and should be ignored.

There is no evidence that the remittance was coded as a "subsequent payment" at any time prior to January 20, 2006. This is the printing date of the transcript that was provided by the defendant as the only evidence of how the IRS treated the remittance. Since the IRS can change a code or alter a transcript at any time without limitation, the only probative evidence of how the IRS regarded the remittance would be a copy of the transcript of the account as it existed immediately following receipt of the remittance on May 5, 2000. Plaintiff asked the defendant to provide a copy of such a transcript, but was told that it could not be done. Once the IRS makes changes to an account, it apparently destroys all prior transcripts.

In *Moran v. United States,* 63 F. 3d 663 (7th Cir. 1995), the court based its finding that the IRS treated a remittance as a payment on the fact that the IRS had posted interest to the taxpayer's account after the remittance. If the remittance were a payment, it would earn interest whether or not it were later applied to satisfy a tax liability. Deposits, on the other hand, earn interest only to the extent that they are actually applied to satisfy a tax liability. In this case, no interest was ever posted to the account. The absence of interest postings is compelling, perhaps conclusive, evidence that the IRS regarded the remittance as a deposit.