Fourth as discussed below, the manner in which the remittance was treated by the IRS is irrelevant in the Federal Circuit. In *New York Life* and *Cohen,* even remittances which pay liabilities proposed by the IRS constitute deposits "as a matter of law" where the taxpayer contests those liabilities. While the liabilities are being contested, they are undefined and any remittance with respect to an undefined liability is a "disorderly" "dumping of funds" that necessarily constitutes a deposit. Remittances which are made before any liability has been proposed by the IRS are far more "disorderly". If the payment of a contested liability proposed by the IRS constitutes a deposit, there can be no doubt that a remittance made in the absence of a proposed liability is a deposit.

**5. *Rosenman* mandates judgment in plaintiff's favor.**

Defendant's attempt to distinguish *Rosenman* is based on the claim that Mr. Hamburgh "carefully estimated its tax liability". Defendant claims that the plaintiff, unlike the taxpayer in *Rosenman,* discharged what she deemed to be a tax liability. This argument assumes facts that are contrary to the undisputed evidence.

The estate owned a condominium unit that it wanted to sell. Title was encumbered by the lien provided under section 6324 for whatever federal estate taxes might be owed. The condominium could not have been sold if the title insurance policy had included an exception to coverage for that lien. The title insurance company agreed to omit the exception, so that the condominium could be sold, provided that the proceeds from the sale of the condominium were held in escrow to provide for any liability that the title insurance company incurred for omitting the exception. If the estate could show that its potential liability exposure for all federal and state death taxes in a worst case scenario was less than the proceeds from the sale of the condominium, the title insurance company agreed that the lesser amount could be held in escrow. Mr. Hamburgh performed the purely mechanical computations of federal and New York taxes,

penalties and interest to illustrate the estate's potential exposure to death taxes in each of three hypothetical scenarios. As he indicated in paragraph 3 of his affidavit dated April 10, 2000, (Exhibt "E", Hamburgh's Affidavit) his computations were solely for the limited purpose determining that exposure. He made it clear that the actual tax liability was subject to various unresolved factors and that the estate was not committed to these figures in any way.

Mr. Hamburgh computed the tax liability based on the assumptions that (i) the estate included the decedent's brother's share of the mortgage, (ii) the value of the mortgage was the value of the mortgaged property; (iii) the broker's $580,000 valuation of the mortgaged property was sustained, and (iv) none of the expenses incurred by the estate were deducted. The computation assumed that each issue involved in the ongoing litigation was resolved 100% in favor of the estate. Mr. Hamburgh was representing the estate in the litigation involving the decedent's brother's interest in the mortgage and the value of the mortgage and mortgaged property. He knew that it was unlikely that each of those issues would be resolved 100% in favor of the estate. Mr. Hamburgh knew that the estate was entitled to deductions which his computations did not take into account.

The computations revealed a worst case exposure to federal estate tax liabilities, including penalties and interest, of $245,791. This was the figure that we used in the affidavit. The other two computations were disregarded entirely. The $245,791 figure, of course, bore no relationship to what Mr. Hamburgh believed to be the estate's federal and state estate tax liability and it bore no relationship to the $165,000 remittance. Even defendant does not contend that it does. The purpose of the computations was to illustrate that the title insurance company's worst case exposure for omitting the exception was no less than the sales price of the condominium. They illustrated how all of the net proceeds from the sale of the condominium, totaling $168,480, had to be held in escrow to provide for that exposure. However, because Ms. Turcotte was

willing to execute an "undertaking" to personally pay any shortfall, the title insurance company was satisfied with having $165,000 of the net sales proceeds held in escrow.[5] The remittance represented the proceeds from the sale of the condominium, not any amount of estate tax that the estate might owe after the litigation was concluded. While it Mr. Hamburgh had good reason to believe that no tax would be owed, any funds that he did not deposit with the IRS had to be held in his non-interest bearing IOTA trust account. If defendant had complied with its own revenue procedure, there would have was no downside in making a deposit that was well in excess of whatever tax might be owed when the litigation was resolved. It was for that reason that Mr. Hamburgh deposited the entire amount of the escrowed funds with the IRS. To make the argument that Mr. Hamburgh believed that the estate owed $165,000, the defendant must ignore the only computation that was used and rely on two other computations that were entirely ignored. One computation assumed a taxable estate of exactly $1,000,000 without any explanation of how that number was derived. Defendant chose those computations, and ignored the only one that was used, for no reason other than the fact that one happened to show a federal tax liability of more than $165,000 and the other happened to show a federal tax liability of less than $165,000. With some liberal "rounding" of the figures, the defendant could arrive at an "average" of $165,000. Somehow, this is supposed to prove that Mr. Hamburgh believed that the estate owed $165,000 in estate tax. That is contrary to Mr. Hamburgh's undisputed testimony.

[5] Defendant suggests that Mr. Hamburgh's affidavit is inaccurate by stating that all of the net sales proceeds were deposited with the IRS when, in fact, only $165,000 of $168,480 net proceeds were deposited. Mr. Hamburgh testified that substantially all of the sales proceeds were deposited into escrow (with $3,480 being applied to pay professional fees) and that all of the escrowed funds were deposited with the IRS.

As Plaintiff discussed in her response to defendant's motion for summary judgment, whether Mr. Hamburgh believed that any estate tax would be owed once the litigation was concluded is academic. Under *Rosenman,* a taxpayer discharges a tax liability it deemed to be a liability only to the extent that it discharges a liability shown to be due on its return. Random figures that happen to be included in its attorney's private workpapers do not constitute an admitted tax liability.

*Rosenman* is clearly on point and mandates that the remittance involved here be characterized as a deposit because it "did not discharge what [the taxpayer] deemed a liability nor pay one asserted [by the IRS]". It was "merely an interim arrangement to cover whatever contingencies the future might define". These are all of the material facts and they are not disputed.

Defendant attempts to read more into *Rosenman* than exists. It is true that the letter accompanying the remittance in *Rosenman* said that it was being made under protest and duress and that the executors contend that less than all of the remittance was due. But they were not protesting a liability that was proposed by the IRS. In *Rosenman,* as here, the IRS had not proposed a liability which the taxpayer could protest. The extension of time for filing a return that the IRS granted did not extend the time for paying the tax. The executors were protesting the IRS' refusal to grant an extension of time for paying the tax until the liability could be determined.

There was nothing for the plaintiff to contest at the time the remittance was made. It did not pay any amount shown to be due in a return or in Form 4768 and it did not pay a liability that was proposed by the IRS. It was simply a random amount dumped on the IRS without any explanation except that it was to be applied to some undisclosed amount of federal estate taxes as and when the estate tax return was filed. There was no admission of any liability. It was made

clear that the federal estate tax liability, if any, was still undefined. That alone made the remittance a deposit.

**6. Under *New York Life* and *Cohen*, the remittances were deposits as a matter of law.**

To its credit, defendant admits that *New York Life Insurance Co. v. United States,* 118 F. 3d 1553 (Fed. Cir. 1997) and *Cohen v. United States,* 995 F. 2d 205 (Fed. Cir. 1993), support plaintiff's position. Each of these decisions affirmed decisions of this Court. Defendant's only argument is that these cases were "wrongly decided". With that admission, summary judgment in plaintiff's favor is mandatory since this Court is bound by the precedents of the Federal Circuit whether or not defendant agrees with them.

That *New York Life* and *Cohen* mandate judgment for plaintiff is beyond debate. In *Cohen,* the taxpayer made a remittance "in partial payment of the proposed deficiency" set forth in a notice of deficiency after he filed a petition with the Tax Court to contest that proposed deficiency. The IRS failed to assess the deficiency prior to the expiration of the statute of limitations and the taxpayer filed a claim for refund of the amount remitted. The Federal Circuit said that a remittance made under these circumstances "was a deposit as a matter of law".

In *New York Life,* the taxpayer remitted three checks "in payment of additional income tax and interest accrued . . . based on a tentative settlement" for each of several taxable years. The additional tax was proposed by the IRS in a 30-day letter, but a notice of deficiency was never issued. The letter which accompanied the remittance did not indicate that the amount of the proposed deficiency was being contested. However, a few months later, the taxpayer executed forms waiving restrictions on assessment in which it "reserved the right to timely file claims for refund or credit or to prosecute timely filed claims . . . on specific grounds. . ." The IRS failed to assess the deficiency for one of the taxable years prior to the expiration of the statute of

limitations. The taxpayer filed a claim for refund which the IRS disallowed as untimely. The Court said that the facts of *New York Life* were "substantially identical to" and "indistinguishable from" those of *Cohen* and that *Cohen* controlled. Accordingly, it held that the remittances made in *New York Life* were deposits.

Plaintiff submits, and defendant apparently agrees, that there is simply no way that the remittances involved here would be payments if the remittances in *New York Life* and *Cohen* were deposits. The arguments that the remittances involved here were deposits are far more compelling than those available to the taxpayers in *New York Life* and *Cohen.* In those cases, the liabilities proposed by the IRS were sufficiently undefined because the taxpayer contested them. In this case, no liabilities were even proposed by the IRS.

Defendant claims that *New York Life and Cohen* (and therefore the underlying decisions of this Court) were "wrongly decided" because they are inconsistent with *Baral v. U.S.,* 120 S. Ct. 1006 (2000). In fact, *New York Life* nor *Cohen* are perfectly consistent with *Baral.* The different results were due to the fact that entirely different types of tax were involved. In *Baral,* the Court had to determine whether, by virtue of section 6513(b), remittances of estimated income taxes and withholding tax are deemed to have been paid on the due date of the calendar year taxpayer's income tax return. Section 6513(b)(1) and (2) provide as follows:

> (1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.
>
> (2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

FTL:1992638:2

The Court held that estimated income taxes and withholding taxes are deemed to have been paid as of the due date of the taxpayer's return because that is specifically mandated by this statute. This statute has no application to remittances of any other type of tax, such as estate tax, or the remittances of income tax under the circumstances involved in *New York Life* and *Cohen.* The Court carefully distinguished between taxes that are "deemed paid" under section 6513(b) and all others which are not. The Court specifically distinguished *Rosenman* on the grounds that it involved estate taxes which are not governed by a "deemed paid" provision akin to section 6513.

*Baral* has no application to any remittance other than estimated income tax and tax withholdings that are subject to the "deemed paid" provisions of section 6513(b). In arguing that *New York Life and Cohen* are inconsistent with Defendant asks the Court to ignore the distinction between these entirely different types of taxes and to treat all remittances as "deemed paid" taxes. It is not surprising that defendant offers no authority in support of the position.

**7. A generic reference to a remittance as a payment does not make it one.**

Defendant cites *Zeier v. United States,* 80 F. 3d 1360 (9th Cir. 1996), for the proposition that a remittance to which the taxpayer refers as a "payment" and "prior payment" on Form 706 can not constitute a deposit. While the court mentioned these facts as incidentally supportive of its conclusion that the remittance was a payment, they were not the basis for its decision.

In *Zeier,* the taxpayer sent a remittance in the amount of $30,000 as a "payment if the estimated federal estate tax." Approximately 3 ½ months later, it filed the Form 706 in which a federal estate tax liability of $45,453 was shown to be due. The prior $30,000 remittance was disclosed as a "prior payment" and a check in the amount of $15,453 accompanied the return. Once the return was filed, the remittance paid the liability that was shown to be due. Under Rev. Proc. 84-58, deposits are applied as payments as and when the tax is assessed. The tax shown to

be due on the return is assessed upon filing the return. Under Rev. Proc. 84-58, *Rosenman* and the cases that apply it, the remittance became a payment once the return was filed.

Thereafter, the taxpayer amended its Form 706 and claimed a refund of $18,579. The IRS disallowed the claim as untimely. The taxpayer argued that the first return it filed was a "tentative" return which did not constitute a return for purposes of starting the statute of limitations. The district court agreed. When the IRS argued in a motion for reconsideration that the court was without jurisdiction to grant a refund request, the district court said that the remittances made prior to the final return were deposits, not payments. The Ninth Circuit said that there was no such thing as a "tentative" estate tax return. Because the initial return constituted the taxpayer's initial return, and because the remittance paid the liability shown to be due on that return, the court said that the remittances were payments.

The classification of the remittances in *Zeier* as payments is perfectly consistent with *Rosenman* and plaintiff's position here because they discharged a tax liability shown to be due on the taxpayer's return. This would be the case regardless of how the taxpayer referred to them in his accompanying letter.

As plaintiff explained in its initial motion for summary judgment and in its opposition to defendant's motion for summary judgment, the manner in which the taxpayer refers to a remittance is of little or no value in determining its intent. In substantially all of the cases in which a remittance was held to be a deposit the taxpayer had referred to it as a payment. That was true in *Rosenman, New York Life, Cohen, and Leich* to name a few. For all intents and purposes, "payment" and "remittance" are synonymous. Even defendant commonly refers to deposits as "advance payments". Under Rev. Proc. 84-58, the character of the remittance is dictated by the circumstances and does not depend to any extent on titles. Under Rev. Proc. 84-58, a remittance that does not discharge a liability shown to be due on a return is a deposit unless

it pays in full a liability that was proposed by the IRS in writing. Rev. Proc. 84-58 allows a taxpayer to designate a remittance as a payment in only one very limited situation. If the remittance pays less than all of a liability proposed by the IRS in writing, the taxpayer may instruct the IRS to apply the remittance as a payment if he clearly indicates what portion of the liability it is to be applied to pay. If he does not clearly indicate the portion of the liability the remittance is to pay, the entire remittance must be treated as a deposit.

Some circuit courts have adopted a rule by which the character of a remittance (other than a remittance that is subject to the "deemed paid" provisions of section 6513(b), including estimated income tax payments remitted with Form 4868, and a remittance made in conjunction with the submission of a tax return) depends on three factors: (1) the timing of the assessment or definition of the liability; (2) the taxpayer's intent with respect to the remittance; and (3) the IRS' treatment of the remittance upon receiving it. As is clear from the decisions in *New York Life* and *Cohen,* the Federal Circuit has not adopted that rule. In the Federal Circuit, a remittance is a deposit "as a matter of law" unless it discharges a tax shown to be due on the taxpayer's return or a liability that is proposed by the IRS without contest. Under this standard, a remittance of an amount not shown to be due on a return or proposed by the IRS clearly constitutes a deposit. Such a remittance is a "disorderly" "dumping of funds" on the IRS which necessary constitutes a non-interest bearing deposit.

Defendant is unable to cite a single case in which a remittance (other than one that is deemed to constitute a payment under section 6513(b)) that did not discharge a tax liability that was shown to be due on the taxpayer's return or was proposed by the IRS in writing was held to be a payment rather than a deposit. It is asking the Court to make new law that would violate firmly established legal principles, including decisions of the Federal Circuit and the Supreme Court.

**WHEREFORE,** plaintiff respectfully requests that her motion for summary judgment be granted.

Respectfully submitted,

**RUDEN, McCLOSKY, SMITH**
**SCHUSTER & RUSSELL, P.A.**
Attorneys for Plaintiff
200 East Broward Boulevard, 15th floor (33301)
Post Office Box 1900
Fort Lauderdale, Florida 33302

By: ____________________
Glen A. Stankee, Esquire
Direct Telephone: (954)761-2907
Direct Facsimile: (954) 333-4107