IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1273 T
(Judge Susan G. Braden)

JOAN HUSKINS, as personal representative of the ESTATE OF PHILIP GOLDSTEIN,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Plaintiff, Joan Huskins, as personal representative of the Estate of Philip Goldstein, pursuant to RCFC 56, hereby submits her Reply to Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Facts, and states:

1. Philip Goldstein died on September 22, 1998, a resident of Florida. A copy of the Certificate of Death, issued by the New York State Department of Health is attached hereto as Exhibit "A".

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

2. The beneficiaries of the decedent's estate (the "Estate") were his daughters, Linda Turcotte and Joan Huskins. A copy of the Philip Goldstein Revocable Trust dated August 21, 1998, is attached hereto as Exhibit "B". A copy of the Last Will and Testament of Philip Goldstein dated July 24, 1998, is attached hereto as Exhibit "C".

Defendant's Response: The defendant agrees with the last two sentences of the proposed finding as stated. The defendant does not agree with the first sentence, which it would rephrase as follows:

FTL:1992646:2

The sole beneficiary of the decedent's estate was the Philip Goldstein Revocable Trust (See Exhibit C, Article VI.) The beneficiaries of the Philip Goldstein Revocable trust (as amended on August 21, 1998) were: Philip Goldstein, during his life (Exhibit B at 4-5); and after his death, the six persons list on page 13 of Exhibit B, who were to receive specific bequests. Linda Turcotte and Joan Huskins were among those legatees. In addition, Linda Turcotte and Joan Huskins were each to receive one half of the residue. (*See id.* at 13-14).

**Plaintiff's Reply to Defendant's Response:** Plaintiff has no objection to the Defendant's foregoing proposed finding of fact as restated.

3. Richard Goldstone, Esq. of Ft. Lauderdale, Florida, was the attorney for the administration of the Estate in Florida. (Aff. ¶5).

Defendant's Response: The defendant agrees with the proposed find as stated, nut notes that the finding should have referenced paragraph 4 of the Affidavit of Mark S. Hamburgh (attached to plaintiff's motion for summary judgment)- not paragraph 5.

**Plaintiff's Reply to Defendant's Response:** Plaintiff agrees with defendant's response and states that the proposed finding should be restated as follows:

Richard Goldstone, Esq. of Ft. Lauderdale, Florida, was the attorney for the administration of the Estate in Florida. (Aff. ¶ 4).

4. Linda Turcotte was appointed the initial personal representative of the Estate. A copy of the Letters of Administration issued by Judge Mel Grossman, Broward County (Florida) Circuit Court on December 16, 1999, are attached hereto as Exhibit "D".

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

5. Linda Turcotte died during the administration of the Estate, and Joan Huskins was appointed as her successor. A copy of the Successor Letters of Administration issued by Judge

FTL:1992646:2

Mel Grossman, Broward County (Florida) Circuit Court on August 11, 2004, are attached hereto as Exhibit "E".

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

6. Mark S. Hamburgh was engaged in March of 2000 to prepare the federal and state estate tax returns on behalf of the Estate. (Aff. ¶5).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

7. Among the assets owed by the Estate at the time of decedent's death were a condominium in Westhampton Beach, New York ("Condominium"), and a mortgage note and mortgage on property located at 311-319 Audubon Avenue, New York, N.Y. ( the mortgage note and mortgage are collectively referred to as the "Mortgage"). A copy of the Estate Inventory, as filed with the Probate Division, Broward County (Florida) Circuit Court, dated May 30, 2003, is attached hereto as Exhibit "F". (Aff. ¶ 6).

Defendant's Response: the defendant agrees that the Condominium was among the assets of the Estate, but the referenced Estate Inventory mentions no mortgage or mortgage note. Instead it mentions a fractional interest in a mortgage-foreclosure action. The referenced paragraph 6 of the affidavit of Mark S. Hamburgh (attached to the estate's motion for summary judgment) states that the mortgage note is the affidavit's Exhibit A. the exhibit identifies Filgo Bert Realties, Inc., as the mortgagee-not Philip Goldstein; and it identifies the mortgaged property as "313-19 Audubon Avenue"- not 311-319 Audubon Avenue. Of these reasons, the defendant restates the finding as follows:

> Among the assets owed by the Estate at the time of decedent's death was a condominium in Westhampton Beach, New York ("Condominium"). The Estate also had

FTL:1992646:2

an interest in a mortgage note and mortgage on property located at 313-319 Audubon Avenue, New York, NY (the mortgage note and mortgage are collectively referred to as the "Mortgage"). A copy of the Estate Inventory, as filed with the Probate Division, Broward County (Florida) Circuit Court, dated May 30, 2003, is attached hereto as Exhibit "F". (Aff. ¶6).

**Plaintiff's Reply to Defendant's Response:** Plaintiff has no objection to the Defendant's foregoing proposed finding of fact as restated.

8. On February 19, 2000, Linda Turcotte, as personal representative of the Estate, entered into a contract to sell the Condominium for $180,000. Attorney William F. Bates represented the Estate in the sale. (Aff. ¶ 7).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

9. In connection with the sale, the purchaser's title insurance company, Aquebog Abstract Corp. ("Title Insurance Company"), raised an exception to coverage based on the absence of proof of payment of New York and federal estate taxes. (Aff. ¶ 8).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

10. Such an exception to title insurance coverage was not acceptable to the purchaser. In order to eliminate the exception for estate taxes from the title insurance policy, Mr. Hamburgh negotiated an agreement between the Estate and the Title Insurance Company. Pursuant to the agreement, the Title Insurance Company would omit the exception provided that the sales proceeds, or, if less, the Estate's estate tax liabilities based on a "worst case scenario", were deposited into escrow for payment of any estate taxes that might be owed. Mr. Hamburgh served as escrow agent under the escrow agreement. Until the Estate's estate tax liabilities were

determined and discharged, the funds could not be applied for any purpose other than federal or state estate taxes. (Aff. ¶ 9).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

11. The Estate was engaged in foreclosure litigation with respect to the Mortgage which commenced prior to the death of decedent. (Aff. ¶ 10).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

12. The Estate's interest in the Mortgage was very difficult to value. While the principal balance of the Mortgage was approximately $175,000, it contained a provision for late fees, the validity and enforceability of which was uncertain. With the late fees, the amount owed under the Mortgage was approximately $2,000,000. However, the Mortgage was non-recourse and therefore its value could not exceed the value of the property which secured it, but the property had not been appraised. To complicate matters further, the decedent's brother, Bertram Goldstein, claimed to own 50% of the Mortgage. (Aff. ¶ 11).

Defendant's Response: The proposed finding combines facts with subjective impressions and conclusions, which should not have been included. *See* RCFC 56(h)(1) (requiring a statement of "material facts"). The defendant therefore restates the proposed finding as follows, marking the impressions and conclusions with the phrase "Mr. Hamburgh believed" –

> Mr. Hamburgh believed that the estate's interest in the Mortgage was very difficult to value. While the principal value of the Mortgage was approximately $175,000, it contained a provision for late fees; Mr. Hamburgh believed that the amount owed under the Mortgage was approximately $2,000,000. However, the Mortgage was non-recourse and therefore its value could not exceed the value of the property which secured it, but the property had not been appraised. The decedent's brother, Bertram Goldstein, claimed to own 50% of the Mortgage. Mr. Hamburgh believes that this complicated matters further. (Aff. ¶ 11).

FTL:1992646:2

**Plaintiff's Reply to Defendant's Response:** Plaintiff has no objection to the Defendant's foregoing proposed finding of fact as restated.

13. Because of the ongoing litigation, the uncertainty of the outcome and the difficulty in valuing the Mortgage, Mr. Hamburgh was unable to prepare the federal and state estate tax returns as and when they were due. (Aff. ¶12).

Defendant's Response: This proposed finding rests on the assumption that the estate's representative cannot file an estate-tax form reporting the estimated value of assets that are subject to litigation or other contingencies. That assumption is incorrect. *See, e.g.,* Treas. Reg. § 20.6081-1(d) (emphasis added) (:A return *as complete as possible* must be filed before the expiration of the extension period. . . .The return cannot be amended after the expiration of the extension period *although supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax on the return"*). For this reason, the defendant restates the proposed finding as follows:

> Because of the ongoing litigation, the uncertainty of the outcome and the difficulty in valuing the Mortgage, Mr. Hamburgh was unable to file a final and completely accurate version of the federal and state estate tax returns as and when the returns were due. (Aff. ¶ 12).

**Plaintiff's Reply to Defendant's Response:** Plaintiff has no objection to the Defendant's foregoing proposed finding of fact as restated.

14. The Title Insurance Company asked Mr. Hamburgh and Mr. Goldstone to determine the Estate's estate tax liabilities under a "worst case scenario". To do so, they obtained a real estate broker's opinion of the value of the mortgaged property on April 10, 2000, from Amit Doshi, of Besen & Associates, Inc. Mr. Doshi determined that the value of the property, and therefore the value of the Mortgage, was $580,000. (Aff. ¶ 13).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

15. Using Mr. Doshi's opinion of the value of the Mortgage, on April 10, 2000, Mr. Hamburgh computed the Estate's federal estate tax liability under the "worst case scenario" to be $178,474. With interest and penalties already accrued on that amount of tax, the total liability would have been $245,791. Mr. Hamburgh's computations did not take into account the claim asserted by the decedent's brother or any deductions to which the Estate may have been entitled. (Aff. ¶ 14).

Defendant's Response: The defendant agrees with the proposed finding as far as it goes, but the proposed finding is incomplete and misleading. The finding suggests that Mr. Hamburgh produced only one computation of the Estate's tax liability – a "worst-case-scenario" computation that "did not take into account the claim asserted by the decedent's brother or any deductions to which the Estate may be entitled."

In fact, Mr. Hamburgh produced two more valuations that did take into account the claim asserted by the decedent's brother and that did at least estimate the deduction to which the Estate might be entitled. He produced those computations on April 14, 2000-just four days after the computations he chose to disclose in his affidavit and three days before the closing on the Condominium. (*See* the Estate's proposed finding 16, *infra.*) In the first of his later computations he assumed that the value of the Mortgage was $460,000 rather than the $580,000 suggested by Mr. Doshi; the result of that computation was a tax liability of $184,905. *See* Appendix B to Brief in Support of Defendant's Motion for Summary Judgment (hereinafter Def. App. B), Stoddard Decl. Ex. 7, page 31. In his second later computation he assumed a hypothetical estate of $1,000,000, which was $194, less than the estimated value of the gross

estate; the computation resulted in a tax liability of $145,374 (tax plus penalties). *See id.* at 33. The average of the two later computations, rounded to the nearest thousand, is $165,000. ($185,000 + 145,000 = $330,000/2 = $165,000) Mr. Hamburgh's affidavit fails to mention these two later computations.

For the reasons given, the defendant restates the proposed finding as follows:

> Using Mr. Doshi's opinion of the value of the Mortgage, on April 10, 2000, Mr. Hamburgh computed the Estate's federal estate tax liability under the "worst case scenario" to be $178,474. With interest and penalties already accrued on that amount of tax, the total liability would have been $245,791. Mr. Hamburgh's computation did not take into account the claim asserted by the decedent's brother or any deductions to which the Estate may have been entitled. (Aff. ¶ 14). Four days later, Mr. Hamburgh computed the Estate's federal estate tax liability by (1) reducing Mr. Doshi's estimate of the Mortgage's value; and (2) reducing the gross estate by $194,000. Those later computations resulted in estate tax liabilities (including penalties) of $184,905 and $145,374, respectively.

**Plaintiff's Reply to Defendant's Response:** Plaintiff objects to defendant's response and proposed restatement thereof because it is inaccurate. As stated in Mr. Hamburgh's affidavit in support of the plaintiff's motion for summary judgment, and Mr. Hamburgh's affidavit of April 10, 2000, (Exhibit E to the Affidavit of Mark S. Hamburgh in support of plaintiff's motion for summary judgment), only the worst case scenario computation was used by Mr. Hamburgh. While additional "valuations" prepared by Mr. Hamburgh, they were ignored for all purposes. There is no evidence that they were ever disclosed to anyone. In particular, plaintiff denies that these other computations took into account the claim asserted by decedent's brother. The second computation clearly did not. The third computation assumed as estate of exactly $1,000,000 without any explanation of how that figure was derived. None of the computations took into account any expenses that the estate was entitled to deduct.

Mr. Hamburgh performed the purely mechanical computations of federal and New York taxes, penalties and interest to illustrate the estate's potential exposure to death taxes. As he

FTL:1992646:2