half years earlier was a "deposit" made to prevent accrual of penalties and interest, but his statement raised no factual issue that could prevent grant of summary judgment to the Government).

The third sentence contradicts the record. Ms. Turcotte did not authorize Mr. Hamburgh to make a "deposit[]... to stop the accrual of interest and penalties on that amount of estate tax." Those words appear nowhere in her letter and cannot be inferred from her letter. In fact, Ms. Turcotte gave Mr. Hamburgh the following instructions (Def. App. B at 44, emphasis added):

> Please consider this as my authorization and letter of instructions to pay pending estate taxes for the Estate of Philip Goldstein.
>
> I am aware that you are presently holding approximately $167,000.00 as proceeds of sale from the closing of the estate's real property in Westhampton Beach, New York. The sum of $165,000.00 should be applied to *pay* Federal Estate Taxes and/or New York Estate Taxes as soon as possible. Please discuss and determine the *payment/s* to Internal Revenue Service and the State of New York and the amount or amounts thereof, between yourself and my Florida attorney, Richard Goldstone, Your mutual decision who to *pay* and how much to *pay* will be acceptable to me.

The defendant agrees with the fourth sentence of the proposed finding as far as it goes, but the sentence is incomplete and misleading in light of the preceding sentences. Mr. Hamburgh hand-delivered the check along with a cover letter that instructed the IRS how to treat the check. The letter stated (Compl. Ex. A, emphasis added): "This *payment* is to be applied to the estate tax on the above-named decedent."

For these reasons, the defendant rephrases the proposed finding as follows:

> Mr. Hamburgh was concerned about the accrual of interest and penalties on any tax liability that the Estate might owe. He recommended to Ms. Turcotte that the escrowed funds be remitted to the IRS to stop the accrual of interest and penalties on that amount of estate tax. By letter dated May 5, 2000, Ms. Turcotte authorized him to compute the payment and to pay the tax. Mr. Hamburgh hand delivered a check to the IRS on the same day with a letter stating, "This payment is to be applied to the estate tax on the above-named decedent".

**Plaintiff's Reply to Defendant's Response:** Plaintiff disagrees with defendant's response and proposed restatement thereof because they are inaccurate. Each of plaintiff's proposed findings are fully supported by the affidavit of Mark Hamburgh, Esq. His affidavit can be read as saying that he and Mr. Goldstone discussed the accrual of interest and penalties and recommended that the escrowed funds be deposited with the IRS. Contrary to defendant's characterization of Mr. Hamburgh's testimony, he recommended to Ms. Turcotte that the escrowed funds be deposited with the IRS to stop the accrual of interest and penalties. In the letter he sent to Ms. Turcotte just four days later, he specifically referred to the remittances as a deposit because that was in accord with his prior recommendation. It is Mr. Hamburgh's testimony that Ms. Turcotte authorized him to make a deposit. That is not contrary to any other evidence, although it is true that the word "deposit" does not appear in her letter. Nothing in the letter instructs Mr. Hamburgh to compute the tax.

Plaintiff proposes to rephrase the proposed finding as follows:

> Mr. Hamburgh and Mr. Goldstoen discussed the the accrual of interest and penalties on any tax liability that the Estate might owe. Theye recommended to Ms. Turcotte that the escrowed funds be deposited to the IRS to stop the accrual of interest and penalties on that amount of estate tax. By letter dated May 5, 2000, Ms. Turcotte instructed Mr. Hamburgh as follows: "The sum of $165,000.00 should be applied to pay Federal Estate Taxes and/or New York Estate Taxes as soon as possible. Please discuss and determine the payment/s to Internal Revenue Service and the State of New York and the amount or amounts thereof, between yourself and my Florida attorney, Richard Goldstone. Your mutual decision who to pay and how much to pay will be acceptable to me." (Ex. I to Affidavit of Mark S. Hamburgh. Mr. Hamburgh hand delivered a check in the amount of $165,000, to the IRS on the same day with a letter which stated in part, "This payment is to be applied to the estate tax on the above-named decedent. The Form 706 has as yet not been filed." (Aff. ¶ 16.;Ex. I to Affidavit of Mark S. Hamburgh).

18. At the time the $165,000 remittance was made on May 5, 2000, the amount of estate tax, if any, owed by the Estate had not been determined and could not be determined. The remittance represented substantially all of the net proceeds of the sale of the Condominium and

bore no relationship to any estate tax liability that was deemed owed by the Estate. It was made to stop the accrual of interest and penalties on whatever federal estate taxes might have been owed. It was not made to satisfy any estate tax liability that had been determined by the IRS. The IRS had never proposed any amount of estate tax liability that the Estate owed. (Aff. ¶ 17).

Defendant's Response: This proposed finding asserts legal conclusions that the Estate would like this Court to reach – but it asserts few facts supported by the record.

The defendant disagrees with the assertions in the first sentence for this reason: Although the Estate could not have calculated its final tax liability when it remitted the $165,000, it had made several good-faith calculations of its liability from information available at the time, based upon reasonable assumptions. *See* Def. App. B at 31-33. The defendant disagrees with the assertions in the second sentence because the amount of the remittance, $165,000, bore a striking relationship to the Estate's good-faith estimates of its tax liability; in fact, the remittance was the average of the two estimates. The defendant does not disagree with the assertions in the third sentence, but the assertions are ambiguous because both payments and deposits stop the accrual of interest and penalties. *See* Rev. Proc. 84-58, § 5.01, set out at page 57 of Brief in Support of Defendant's Motion for Summary Judgment (Def. Mot.). Similarly, the defendant does not disagree with the assertions in the fourth and fifth sentences, but the assertions are irrelevant and misleading: they imply (falsely) that a taxpayer cannot "pay" a liability that the IRS has not determined or assessed. *See* Def. Mot. at 15-17 and 25-28.

For these reasons, the defendant rephrases the proposed finding as follows:

> At the time the $165,000 remittance was made on May 5, 2000, the amount of estate tax, if any, had not been determined with finality. The remittance represented substantially all of the net proceeds of the sale of the Condominium. The amount of the remittance was in the mid-point of the possible estate-tax liabilities that the Estate had estimated on April 14, 2000. The remittance was made to stop the accrual of interest and penalties on whatever federal estate taxes might have been finally determined. It was not made to satisfy any estate-tax liability that had been determined by the IRS. The IRS had

FTL:1992646:2

never proposed any amount of estate-tax liability that the Estate owed. Only the Estate had made estimates of its estate-tax liability.

**Plaintiff's Reply to Defendant's Response:** Plaintiff disagrees with defendant's response and proposed restatement thereof because they are inaccurate. In particular, plaintiff disagrees that any computations by Mr. Hamburgh were godd faith estimates of the estate's federal estate tax liability. They clearly were not. Accordingly, plaintiff's proposed finding of fact should be adopted as proposed.

19. The litigation with the decedent's brother, Bertram Goldstein, was resolved in December of 2000. Ultimately, the foreclosure litigation involving the Mortgage was settled for $340,144. The Estate's interest in the Mortgage could be correctly valued for estate tax purposes at $170,072 (as contrasted with the $580,000 value that was used in computing the estate tax liability under the "worst case scenario"). (Aff. ¶ 18).

Defendant's Response: The defendant agrees with the first sentence of the proposed finding as stated. The second sentence, however, is vague and omits a fact of interest: the foreclosure litigation was "ultimately" settled on February 7, 2002. See Affidavit of Mark S. Hamburgh, ¶ 18 and Ex. L at 8. The judge approved the settlement on March 5, 2002. Id., Ex. L. at 9. The Estate could have recovered its $165,000 remittance, plus interest, by filing a claim as late as May 5, 2003-three years after the payment date. *See* 26 U.S.C. § 651 l(b)(2)(A). The Estate, however, did not file its estate-tax return until November 12, 2004-more than two years and eight months after the Mortgage litigation was settled and "[t]he Estate's interest in the Mortgage could be correctly valued for estate tax purposes at $170,072." This fact casts doubt on the Estate's excuse for filing an untimely refund claim.

The third sentence is incomplete and misleading: it implies that the Estate could not have valued the Mortgage "for estate tax purposes" before the litigation ended. The implication is false.