The law required the Estate to file the return within nine months of the decedent's death (26 U.S.C.§ 6018(a)(1)) or within an extension of time that the Estate could have requested, but failed to request. The Estate should have estimated the value of the Mortgage and should have filed "a return [that was] as complete as possible" within the time allowed by law; it could have filed supplemental information later, *See* Treas. Reg. § 20.6081-1(d). Furthermore, the third sentence of the proposed finding fails to note that the estate in fact did assign a lower value to the mortgage ($460,000) when it computed its estate-tax liability on April *14, 2000. See* Def, App. 31.

For this reason, the defendant rephrases the proposed finding as follows:

> The litigation with the decedent's brother, Bertram Goldstein, was resolved in December of 2000. On February 7, 2002, the foreclosure litigation involving the Mortgage was settled for $340,144; the judge approved the settlement on March 5, 2002. The Estate's interest in the Mortgage could then be given its final and conclusive value of $170,072 (as contrasted with the $580,000 value that was used in computing the estate tax liability under the "worst case scenario" and the $460,000 value used in the Estate's tax computation of April 14, 2000).

**Plaintiff's Reply to Defendant's Response:** Plaintiff disagrees with much of defendant's response and proposed restatement thereof because they are inaccurate. Much of it is simply argument with which plaintiff disagrees.

Plaintiff agrees to rephrases the proposed finding as follows:

> The litigation with the decedent's brother, Bertram Goldstein, was resolved in December of 2000. On February 7, 2002, the foreclosure litigation involving the Mortgage was settled for $340,144; the judge approved the settlement on March 5, 2002. The Estate's interest in the Mortgage could then be given its final and conclusive value of $170,072 (as contrasted with the $580,000 value that was used in computing the estate tax liability under the "worst case scenario").

20. The federal estate tax return was filed on November 2, 2004. With the $138,380 in deductions that were disregarded in computing the estate tax liability under the "worst case scenario", the taxable estate for federal estate tax purposes totaled just $636,126, and the tentative tax on that amount totaled $206,167. After the unified credit of $202,050 and a state

death tax credit of $4,117, were applied, the Estate had no federal estate tax liability. The federal estate tax return disclosed the $165,000 remittance and the Estate's entitlement to its return. (Aff. ¶ 19).

Defendant's Response: The first sentence of the proposed finding is incorrect: the federal estate tax return was filed on November 12, 2004. *See* Def. App. B at 4, 9; Plaintiff's Proposed Findings, Ex. G. The second sentence is incomplete and misleading: it notes, correctly, that the Estate ignored the $138,380 of deductions in its "worst case scenario" computation; but it fails to disclose that the Estate made two other computations, and in one of those computations it effectively subtracted deductions of $194,000 from what it had had estimated to be the gross estate ($1,194,000). *See* Def. App. B at 33. The defendant agrees with the third sentence as stated. The fourth sentence, however, misstates the facts: On line 24 of its return the Estate reported 165,000 as "Prior Payments" (Def. App. b at 59); on line 27, the Estate reported -165,000 as "overpayment"? *(ibid.)*; and on a schedule captioned "Statement of Prior Payments," the Estate reported $165,000 as "Amount of Payment" and as "Total of Payments." to confirm the impression given by the return that the Estate had made a payment, Mr. Hamburgh later telephoned the IRS to inquire about "the status of the overpayment shown on the return." Def. App. B. at 68.

For the reasons given, the defendant rephrases the proposed finding as follows:

> The federal estate tax return was filed on November 12, 2004. With the $138,380 in deductions that were disregarded in computing the estate tax liability under the "worst case scenario", the taxable estate for federal estate tax purposes totaled just $636,126, and the tentative tax on that amount totaled $206,167. (The Estate, however, made other computations in addition to the "worst case scenario" computation; in those computations, it reduced the gross estate by various amounts.) After the unified credit of $202,050 and a state death tax credit of $4,117 were applied, the Estate had no federal estate tax liability. The federal estate tax return disclosed "prior payments" of $165,000 and reported an "overpayment" of $165,000.

**Plaintiff's Reply to Defendant's Response:** Plaintiff agrees that the date in the first sentence of the proposed findings should be November 12, 2004 rather than November 2, 2004. Plaintiff objects to the defendant's characterization of the second sentence of its proposed finding as "incomplete and misleading". Further, Plaintiff disagrees that the fourth sentence of its proposed finding "misstates the facts". The defendant argues that the plaintiff's use of the term "remittance" is somehow misleading or and misstatement of fact. When he prepared the Form 706, Mr. Hamburgh entered the amount of the remittance in the blanks on the federal estate tax return entitled "overpayments" and "prior payments" because the defendant does not provide a blank on the return for "deposits". The "overpayments" and "prior payments" blanks are the only means that defendant provides on the return by which an estate can communicate its entitlement to funds that are in the defendant's possession. Meaningless labels are hardly probative of the plaintiff's intent, particularly where, as here, defendant provides no other alternatives. In any event, the issue in this case involves the character of the remittance at the time it is made, not how the remittance was labeled on the Form 706 several years later. For these reasons, the plaintiff rephrases the proposed finding as follows:

> The federal estate tax return was filed on November 12, 2004. With the $138,380 in deductions that were disregarded in computing the estate tax liability under the "worst case scenario", the taxable estate for federal estate tax purposes totaled just $636,126, and the tentative tax on that amount totaled $206,167. After the unified credit of $202,050 and a state death tax credit of $4,117, were applied, the Estate had no federal estate tax liability. The federal estate tax return disclosed the $165,000 remittance and the Estate's entitlement to its return. (Aff. ¶ 19).

21. On April 29, 2005, the IRS issued an Estate Tax Closing Document reflecting that the Estate had no federal estate tax liability. (Aff. ¶ 20).

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

FTL:1992646:2

22. On August 29, 2005, the IRS advised Mr. Hamburgh that it regarded the $165,000 remittance as a payment and the demand for its return as a claim for refund which it disallowed on the grounds that it was barred by the statute of limitations because the estate tax return was postmarked more than three years after the return due date. (Aff. ¶ 22).

Defendant's Response: The proposed finding misstates what the IRS told Mr. Hamburgh. It gives the impression that the IRS imposed the label "payment" upon the remittance and arbitrarily decided to "regard" the demand for its return as a claim for refund. In fact, the IRS was responding to Mr. Hamburgh's wishes, which he had expressed both orally and in writing. On August 16, 2005, nearly two weeks before the IRS sent the letter mentioned in the proposed finding, Mr. Hamburgh inquired about what he called "the status of the *refund* of the *overpayment shown on the return.*" Def. App. B at 58 (emphasis added). In its letter of August 29, 2005, the IRS simply said: "We couldn't allow your claim". Compl. Ex. C. The word "payment" appears on none of the letter's four pages. *See* id. To say the least, the IRS never "advised Mr. Hamburgh that it regarded the $165,000 remittance as a payment." It was Mr. Hamburgh who had called the remittance a payment and who had demanded its refund as an overpayment.

For these reasons, the defendant rephrases the proposed finding as follows:

> On August 29, 2005, the IRS advised Mr. Hamburgh that it could not allow his claim because the estate tax return was postmarked more than three years after the return due date.

**Plaintiff's Reply to Defendant's Response:** Plaintiff disagrees with much of defendant's response and proposed restatement thereof because they are inaccurate. Defendant states that the plaintiff's proposed finding "misstates what the IRS told Mr. Hamburgh" and that the "impression that the IRS imposed the label 'payment' upon the remittance and arbitrarily decided to 'regard' the demand for its return as a claim for refund." However, the IRS's

letter of August 29, 2005, clearly states that the claim was disallowed because "Your return was postmarked more than three years after the return due date plus any extensions". The statute of limitations under which the Estate's "claim for refund" was denied, applies only to payments, not deposits.

Notwithstanding the foregoing, Plaintiff has no objection to the foregoing proposed finding of fact as restated.

23. The IRS coded the remittance as a "670 – subsequent payment". The offsetting debit which zeroed out the Estate's account was coded "820- credit transferred". No amount of federal estate tax was ever assessed. A copy of the transcript of the account is attached as Exhibit "G".

**Reply:** Plaintiff and defendant have agreed to the foregoing proposed finding of uncontroverted fact.

Respectfully submitted,

**RUDEN, McCLOSKY, SMITH**
**SCHUSTER & RUSSELL, P.A.**
Attorneys for Plaintiff
200 East Broward Boulevard, 15th floor (33301)
Post Office Box 1900
Fort Lauderdale, Florida 33302

By: ______________________
Glen A. Stankee, Esquire
Direct Telephone: (954)761-2907
Direct Facsimile: (954) 333-4107

FTL:1992646:2

WILLIAM F. BATES
ATTORNEY AT LAW
120 COURT STREET
POST OFFICE BOX 1463
RIVERHEAD, NEW YORK 11901-0952
TELEPHONE: (631) 727-0050
FAX: (631) 369-4080

April 17, 2000

MARK S. HAMBURGH, ESQ.
12 East 41st Street, 6th Floor
New York NY 10017-6221

Re: **Estate of PHILIP GOLDSTEIN, Deceased to BUSLER**
**3038 Mitchell Road, Westhampton Beach NY**

Dear Mr. Hamburgh:

Enclosed please find Closing Statement with copies of checks and bills, etc. annexed which reflects the entire transaction.

Also enclosed are checks as follows representing net proceeds after expenses:

1. Ridgewood Savings Bank Check #47263 to your order As Attorney in the amount of $144,000.00;
2. North Fork Bank Cashier's Check #66810443 to your order As Attorney in the amount of $18,000.00;
3. Check #280 of Busler to your order As Attorney in the amount of $357.17;
4. My Escrow Management Check #1261 to your order As Attorney in the amount of $1,300.00; and
5. My Escrow Management Check #1262 to your order As Attorney in the amount of $3,397.02.

The check to your order in the amount of $1,300 represents the amounts prepaid by Linda Turcotte for expenses from her Trust. I have checked with Ken Zahler of the Title Company and this amount may be released to Linda, as you will still receive over $165,000 to hold in escrow against payment of Federal and State Estate Taxes.

Exhibit "A"

If you have any questions, please give me a call.

Very truly yours,

WILLIAM F. BATES

WFB:cg
Encs.
Express Mail #EL476637986US
Pc: RICHARD GOLDSTONE, P.A.
2400 West Cypress Creek Road
Suite 100
Fort Lauderdale FL 33309