No. 05-1273 T
(Judge Susan G. Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

JOAN HUSKINS, as personal representative of the
ESTATE OF PHILIP GOLDSTEIN,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
ROBERT STODDART
Attorneys
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, DC 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

## TABLE OF CONTENTS

*Page*

Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*A. Under Rosenman v. United States, the character of a remittance depends upon the tenor of the business transaction between the taxpayer and the IRS–but the estate refuses to consider either the holding of Rosenman or the tenor of its business transaction with the IRS.* . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*B. Under the precedent of the Court of Claims, the estate's remittance was a payment because the estate never indicated that it owed no tax in the amount of the remittance.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*C. Code § 6401(c) demonstrates that the estate made no "disorderly remittance" when it sent the IRS a sum computed in relation to the estate's assets–even though the estate later learned that it owed no tax.* . . . . . . . . 7

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Appendix

Irving M. Copi & Carl Cohen, *Introduction to Logic* (9th ed. 1994). . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

Cases:

*Baral v. United States*, 528 U.S. 431 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Charles Leich & Co. v. United States*, 329 F.2d 649 (Ct. Cl. 1964). . . . . . . . . . . . . . . . . . . . . . . 5, 6
*Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Deaton v. Comm'r*, 440 F.3d 223 (5th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
*E.T. Horn Co. v. United States*, 945 F.2d 1540 (Fed. Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Hanley v. United States*, 63 F. Supp. 73 (Ct. Cl. 1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7
*New York Life Ins. Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997).. . . . . . . . . . . . . . . . . . . 5
*Northern Natural Gas Co. v. United States*, 354 F.2d 310 (1965). . . . . . . . . . . . . . . . . . . . . . . 6, 10
*Reading Co. v. United States*, 93 F. Supp. 598 (Ct. Cl. 1951).. . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
*Rosenman v. United States*, 323 U.S. 658 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

[Table of Authorities, continued]

*Page*

Statutes:

26 U.S.C. (Internal Revenue Code of 1986):

§ 6075.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6151.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6401.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10
§ 6611.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Miscellaneous:

H.R. Conf. Rep. No. 78-510 (1943).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11
Irving M. Copi & Carl Cohen, *Introduction to Logic* (9th ed. 1994). . . . . . . . . . . . . . . . . . 6
Rev. Proc. 84-58, 1984-2 C.B. 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1273 T
(Judge Susan G. Braden)

JOAN HUSKINS, as personal representative of the
ESTATE OF PHILIP GOLDSTEIN,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, the United States, hereby replies to the Plaintiff's Opposition to Defendant's Motion for Summary Judgment (hereinafter Pl. Opp.).

The estate's Opposition essentially ignores the arguments raised in the Brief in Support of Defendant's Motion for Summary Judgment (hereinafter Def. Mot.). For example, at pages 28-30 of that brief, the defendant demonstrates how the estate has misunderstood Rev. Proc. 84-58: those three pages mention Rev. Proc. 84-58 twelve times and discuss its content in detail. Nevertheless, the estate unaccountably insists that the defendant cited Rev. Proc. 84-58 only in the "Questions Presented" section (page 2) "*without mentioning it by name or addressing its content any where else in its brief*." Pl. Opp. at 4 (emphasis added). Naturally, the estate failed to respond to arguments it overlooked. The defendant will point out other such failures in this reply.

STATEMENT

Philip Goldstein died on September 22, 1998. (Def. PF 1.) The law required the estate to file an estate-tax return and pay the tax on or before June 22, 1999. *See* Code §§ 6075(a) & 6151(a).[1] The estate sought no extension of time either to file the return or to pay the tax. By May 5, 2000, when the Goldstein estate's tax lawyer sent the IRS a check for $165,000, the estate-tax payment had been due and owing for over ten months. The amount was at the midpoint of two estate-tax calculations the tax lawyer had made on April 14, 2000. (*See* Def. PF 22, 23.) The IRS received the check along with the tax attorney's cover letter and the following instructions: "This payment is to be applied to the estate tax on the estate of the above-named decedent." (Def. PF 29.) The IRS accordingly posted the check as a payment toward the estate tax. (Def. PF 30.) The estate eventually demanded a refund of its remittance as an "overpayment"–more than once, both orally and in writing. (*See* Def. PF 39, 41.)

Under these circumstances, the remittance could have been nothing but a payment when it was made, whatever the estate may say it is now; and the IRS could have treated the remittance as nothing but a payment without ignoring reality.

ARGUMENT

Before filing its complaint, the estate neither did nor said anything that could have led the IRS to suspect that the remittance was a deposit. Nevertheless, the estate now asserts: "It has always been plaintiff's position that the remittance was a deposit when made." Pl. Opp. 6-7. But the IRS cannot be expected to characterize a remittance as a "deposit when made" if the

---

[1] Most of the non-case authorities cited in this brief can be found in Appendix A of Def. Mot. The one exception appears in the Appendix of this brief.

characterization depends upon a taxpayer's secret and unexpressed "position." That position could change retroactively if the taxpayer later files a timely claim for refund, because a timely claim entitles the taxpayer to interest on an "overpayment" but not on a remittance that was a "deposit when made." *See* Code § 6611(a).

If the Goldstein estate had filed a timely claim for refund, the IRS could not have refused to pay interest on the estate's "deposit when made," because the IRS could have presented no evidence that the remittance was a deposit when made. *See, e.g., Hanley v. United States*, 63 F. Supp. 73, 80 (Ct. Cl. 1945) (Before filing a return, an estate remitted an estimate of its tax liability, which exceeded the tax as finally determined. The Commissioner refused to pay interest on the ground that the remittance was a deposit. After Congress enacted what is now Code § 6104(c), the Commissioner agreed that the remittance had to be a payment under the precedent of the Court of Claims and paid the interest).

If under the circumstances of the present case the IRS could not have argued that the Goldstein estate's remittance was a deposit in order to deny interest on an "overpayment," then the estate cannot argue that the remittance was a deposit in order to evade the statute of limitations on refunds. *Cf. Rosenman v. United States*, 323 U.S. 658, 663 (1945) ("It will not do to treat the same transaction as payment and not as payment, whichever favors the Government").

*A. Under Rosenman v. United States, the character of a remittance depends upon the tenor of the business transaction between the taxpayer and the IRS–but the estate refuses to consider either the holding of Rosenman or the tenor of its business transaction with the IRS .*

As courts have long recognized, "[t]he distinction between deposits and payments was first established in *Rosenman*." *Deaton v. Comm'r*, 440 F.3d 223, 228 (5th Cir. 2006). It follows that the parties in the present case must properly understand the holding of *Rosenman*–a task that is easier now that the Supreme Court itself has explained the holding. At page 26 of Def. Mot., the defendant repeated the Court's explanation: The "tenor" of the "business transaction" between the taxpayer and the IRS determines whether a remittance is a payment or a deposit. *See Baral v. United States*, 528 U.S. 431, 438 (2000) (emphasis added) (The Court "rejected the Government's argument [in *Rosenman*] that payment occurred when the remittance of estimated tax was made . . . *only* because it was not in accord with the 'tenor' of the 'business transaction'").

In the present case, both parties should have built their arguments upon this understanding of *Rosenman*–but the estate ignores it. The estate's opposition cites *Baral* only once (Pl. Opp. at 16), but cites it for a different proposition. It fails to quote or even to acknowledge *Baral*'s explanation of *Rosenman*. Consequently the estate never discusses its "business transaction" with the IRS. Instead, the estate bases its arguments upon its own notion of *Rosenman*'s holding, which does not agree with the Supreme Court's understanding. In the estate's view, "*Rosenman* holds that any remittance which does not pay a tax liability that was asserted by the IRS will necessarily constitute a deposit unless it discharges what the taxpayer *deems* to be its tax liability." Pl. Opp. at 8 (emphasis added).

Of course, only the estate can know what it *deemed* to be a tax liability on May 5, 2000, when it made its remittance. Now that the statute of limitations has run, the estate finally decided to disclose that it *deemed* its remittance to be a deposit. Under the estate's reading of *Rosenman*, its own subjective and undisclosed understanding must determine the character of the remittance, even though no one could have divined this understanding until December 9, 2005, when the estate filed its complaint. If the estate is right about the law, the IRS could not have characterized the remittance either as a payment or as a deposit for five years and seven months.

This is not the law, and if it were the law the IRS could not process remittances. The character of a remittance depends upon the "business transaction" between the taxpayer and the IRS, and the terms of the transaction must be clear to the parties when they enter it. For example, in *Rosenman*, "the Supreme Court specifically considered all of the facts and circumstances surrounding the executors' original remittance, including the executors' intent *as stated in the transmittal letter* and the IRS's treatment of the remittance once received." *Deaton*, 440 F.3d at 228 (emphasis added). The Goldstein estate has cited no case in which a court found a remittance to be a deposit if the taxpayer failed to disclose its supposed view that it owed no tax in the amount of the remittance; the estate cites only cases in which the taxpayer contested its liability for the tax when making the remittance and thus put the IRS on notice that the remittance was not a payment.[2]

[2] Pl. Opp 5 cites *Charles Leich & Co. v. United States,* 329 F.2d 649 (Ct. Cl. 1964) (*id*. at 653: "throughout the entire period taxpayer was contesting the proposed liability"); Pl. Opp. 12 cites *Rosenman* (323 U.S at 660: "it is contended by the executors that not all of this sum is legally or lawfully due"); Pl. Opp. 15 cites *Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993) (*id*. at 209: "remittance made . . . under protest . . . in clear circumstances of contest"); Pl. Opp. 18 cites *New York Life Ins. Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997) (*id*. at 1559: "the taxpayer had protested the proposed deficiency").

*B. Under the precedent of the Court of Claims, the estate's remittance was a payment because the estate never indicated that it owed no tax in the amount of the remittance.*

The estate supports its misunderstanding of *Rosenman* by misconstruing cases decided by the Court of Claims. For example, in *Charles Leich & Co.*, 329 F.2d at 652, the Court stated: "It seems clear that a remittance made by a taxpayer of an amount shown in good faith to be due on its tax return or given in response to an assessment of taxes by the Internal Revenue Service is a payment of tax." And in *Northern Natural Gas Co. v. United States*, 354 F.2d 310 (Ct. Cl. 1965), the Court held that a remittance was a payment. As part of its explanation the Court noted: "First, we find that the plaintiff did not simply dump funds on the Commissioner. It replied to a deficiency notice." *Id*. at 316. From these statements the estate draws the following inference: "This Court has consistently said that any remittance that does not pay a liability that the taxpayer has shown to be due on a return, or that was proposed by the IRS, is a 'disorderly remittance' or a 'dumping' of funds on the IRS. Such disorderly remittances necessarily constitute deposits and not interest bearing tax payments." Pl. Opp. at 12.

It is true that a remittance is not "disorderly" (and that it therefore constitutes a payment) if it accompanies a tax form or is made in response to a notice of deficiency. It does not follow, however, that a remittance *is* disorderly (and that it therefore constitutes a deposit) if it does *not* accompany a tax form or is *not* made in response to a notice of deficiency. The estate has built its argument on the elementary logical fallacy of denying the antecedent, a form of *non sequitur*.[3]

[3] Any argument in the following form is invalid: "If p then q. Not p. Therefore, not q." *See* Irving M. Copi & Carl Cohen, *Introduction to Logic* 357 (9th ed. 1994), Appendix, *infra*.

The estate has also overlooked cases in which the Court of Claims found remittances to be payments even though the remittances did not accompany tax forms or respond to liabilities proposed by the IRS: *Hanley*, 63 F. Supp. at 80 (before filing a return–and not in response to any proposed liability–an estate remitted a sum that it estimated to be its estate tax. Though the sum exceeded the liability shown on the later return, the remittance was a payment); *Reading Co. v. United States*, 98 F. Supp. 598, 599 (Ct. Cl. 1951) (before filing a return–and not in response to any proposed liability–a corporation remitted a sum that it estimated to be its capital-stock tax. Though the sum greatly exceeded the liability shown on the later return, it was a payment). The estate cites both of these cases in its Opposition–*Reading Co.* at page 12 and *Hanley* at page 13–but it misunderst them, as it frequently demonstrates by asserting a proposition that those cases make untenable. *See, e.g.,* Pl. Opp. at 2 (emphasis added) ("It has always been Plaintiff's position that the remittance was a deposit *because it did not pay a liability that was shown to be due on a return or a liability that was proposed by the IRS*"); *accord id.* at 3, 8, 12, 13, 15, 23, 24. The estate's remittance, made without contest, resembles the remittances made without contest in *Reading Co.* and *Hanley*–it was a payment.

*C. Code § 6401(c) demonstrates that the estate made no "disorderly remittance" when it sent the IRS a sum computed in relation to the estate's assets–even though the estate later learned that it owed no tax.*

The estate attempts to show (*e.g.*, Pl. Opp. at 3, 8-11) that its tax attorney made a "disorderly" remittance, *i.e.*, that he "dumped" the estate's money on the IRS in "amounts not computed in pursuance of the actual or reasonably apparent requirements of the code, or not transmitted in accordance with the procedures set up by the code, or by other abuses of tax administration." H.R. Conf. Rep. No. 78-510, at 48 (1943), App. A of Def. Mot. This would

have been strange conduct in a fiduciary, but Mark S. Hamburgh did not commit such a cavalier abuse of trust. Code § 6401(c) and its legislative history demonstrate that Mr. Hamburgh sent the IRS a remittance computed in pursuance of the reasonably apparent requirements of the Code. That section provides: "An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

This statute would state a mere truism if "paid" and "payment" had dictionary meanings like "remit" and "remittance," but the Court cannot assume that Congress enacted a pointless statute. Accordingly, the Court should consider the legislative history to determine if Congress intended the words to have a technical meaning. *See, e.g., E.T. Horn Co. v. United States*, 945 F.2d 1540, 1543-44 (Fed. Cir. 1991); *see also, e.g., Reading Co.*, 98 F. Supp. at 599-600 (paraphrasing the legislative history at length). The defendant has already set out the legislative history (Def. Mot at 16), but must set it out again to refute the estate's errors. The relevant legislative history provides (H.R. Conf. Rep. No. 78-510, at 48; emphasis added):

> The income-tax law requires the taxpayer to make a return of his tax and to pay the tax so returned. These requirements contemplate that in the discharge of these duties at the time, place, and manner prescribed, *honest mistakes will occur–mistakes both as to the amount of the tax and as to the existence of any tax liability; and that such honest mistakes made incident to the bona fide orderly compliance with the actual or reasonably apparent duties of the taxpayer are to be corrected under the provisions of law governing overpayments.* It is believed that existing law so provides. The language of certain court decisions (holding that certain payments, not made incident to a bona fide and orderly discharge of actual or reasonably apparent duties imposed by law, are not overpayments and accordingly that interest is not payable) has been read by some as meaning that no payment can result in an overpayment if no tax liability actually existed. It is not believed that such reading is in any way a statement of existing law. . . .
>
> . . . . It is thought that the code does not contemplate that liability for interest can be cast on the Government merely by dumping money as taxes on the

> collector, by disorderly remittances to him of amounts not computed in pursuance of the actual or reasonably apparent requirements of the code, or not transmitted in accordance with the procedures set up by the code, or by other abuses of tax administration.

As the defendant has already shown, the estate had a duty to pay estate tax on June 22, 1999. In a late attempt to discharge that duty, the estate made three computations–with mathematical exactitude–under the provisions of the Code. *See* Def. Mot. at 19-24. The three calculations resulted in three different estimates: $232,017, $184,905, and $145,374. *See* Def. Mot. at 23. After selling some real property, the estate received $168,480 of net sales proceeds. Affidavit of Mark S. Hamburgh, ¶ 15. Mr. Hamburgh remitted $165,000 of the proceeds to the IRS.

The estate explains these facts in ways that are sometimes obviously wrong. For example it asserts: "The remittance was simply the net proceeds from the sale of the condominium." Pl. Opp at 8. But the net proceeds were $168,480, not $165,000. The estate also says that "[t]he purpose of [Mr. Hamburgh's] computations was to illustrate that the title insurance company's worst case exposure for omitting the exception was no less than the sales price of the condominium." Pl. Opp. at 10. But one of the computations resulted in an "exposure" of $145,374, which is $23,106 less than the sales price of the condominium and $19,626 less than the $165,000 remittance.

The estate fails to mention Mr. Hamburgh's two later computations in its proposed findings of uncontroverted fact or in its first brief, and its Opposition fails to explain why Mr. Hamburgh took the trouble to compute the title company's "worst case exposure" two more times. The defendant will assume, however, for the sake of argument, that Mr. Hamburgh was merely calculating the estate's "exposure" to tax, as the estate insists. The estate cannot argue

that a remittance covering its presumed exposure to tax constitutes an "amount[] not computed in pursuance of the actual or reasonably apparent requirements of the code." H.R. Conf. Rep. No. 78-510, at 48.

The estate finds proof of "dumping" in the difference between its $165,000 remittance and the $0 of tax it reported on its estate-tax form. The Court of Claims was willing to call a remittance "disorderly" if the amount had "no conceivable relationship to the temporarily undetermined liability" (*Northern Natural Gas*, 354 F.2d at 315). From this language the estate concludes that its remittance must have been a deposit. In its words, "Even defendant does not venture far enough to allege any relationship between the amount of the remittance ($165,000) and the amount of the temporarily undetermined liability ($0)." Pl. Opp. at 20.

The estate misunderstands the Court of Claims and ignores Code § 6401(c). The estate admits that it intended its remittance to cover its "exposure" to estate tax. Its *temporarily undetermined liability* was its exposure to tax, and the estate prepared three elaborate calculations of its exposure. The remittance had more than a merely "conceivable" relationship to the exposure the estate calculated (*see* Def. Mot at 23); accordingly, it was not a "disorderly remittance" as the Court of Claims understood the term.

Furthermore, if a remittance cannot be a payment when it has no relationship to the amount of the tax *as finally determined*, only the smallest remittances could constitute payments when the taxpayer owes no tax. All other remittances (including the estate's) would constitute deposits. That is exactly the result Congress enacted Code § 6401(c) to prevent. Under the statute, remittances of any amount can be payments even if the tax liability is $0.

The estate made an honest mistake when it overestimated its "exposure" to tax. It sent a carefully-computed but (as it turned out) excessive remittance to the IRS in late compliance with its duties under the Code. As Congress instructed, "such honest mistakes made incident to the bona fide orderly compliance with the actual or reasonably apparent duties of the taxpayer are to be corrected under the provisions of law governing overpayments." H.R. Conf. Rep. No. 78-510, at 48. Accordingly, the estate's remittance was a payment.[4]

CONCLUSION

For the reasons given in its briefs, the defendant asks the Court to dismiss the complaint with prejudice.

Respectfully submitted,

s/ Robert Stoddart
ROBERT STODDART
U.S. Justice Department, Tax Division
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

s/ David Gustafson

December 4, 2006

[4] As the defendant has noted (page 1, *supra*), the estate failed to respond to the defendant's argument concerning Rev. Proc. 84-58, Def. Mot. at 28-30. The estate simply repeats its earlier arguments, uninfluenced by anything the defendant has said (*see* Pl. Opp. at 4-5, 17, 22, 23, 24). Under these circumstances, the defendant's "reply" will have to be its own response to the estate's original argument, pages 4-8 of Defendant's Brief in Response to Plaintiff's Motion for Summary Judgment.